# Union Naval Stores Co. *v.* Pugh, *et al.*

*Action for Damages for Trespass to Land.*

(Decided June 4, 1908.   47 South. 48.)

1. *Parties; Amendment; Bringing in Parties.*—A plaintiff is entitled to amend his complaint at any time by inserting the name of a co-plaintiff previous to the retirement of the jury. (Section 3331, Code 1896.)

2. *Attorney and Client; Authority to Represent; Necessity for.*— Where two parties joined as co-plaintiffs in an action in trespass to land, and it developed in the proof that another party owned an interest in the land in common with the parties plaintiff, the parties plaintiff were entitled to use the name of the co-tenant in bringing the suit, and it was not necessary that the attorney should show any authority for representing such co-tenant not originally a party

C 24

to the suit; such co-tenant, however, was entitled to require the execution or a bond indemnifying against loss on account of the use of such co-tenant's name.

3. *Principal and Agent; Evidence; Acts and Declaration of Agents.* —In the absence of independent proof of the agency the acts and declarations of one purporting to be an agent are not admissible for the purpose of showing agency.

4. *Same; Evidence of Agency.*—While the payment of taxes of one claiming to be an agent is not admissible as evidence of agency, its admission is rendered harmless upon the introduction of other evidence tending to show the agency, and the recognition of such agent by the principal.

5. *Evidence; Admissions; Declaration of Agent.*—The declaration of an agent or officer of a corporation is not competent evidence against the principal, unless made within the scope of the agent's authority while in the discharge of his duties in the particular transaction of which they constitute a part of the res gestae.

6. *Same; Best and Secondary Evidence.*—It is not proper to show by a witness that another executed to him a deed conveying the twenty acres of land involved in the suit, since the deed was the best evidence and the question was indefinite in form.

7. *Appeal and Error; Review; Objections in Lower Court.*—In reviewing the rulings of the lower court, this court is confined to the specific grounds assigned to the evidence in the lower court.

8. *Same; Harmless Error; Admission of Evidence.*—Where the evidence brought out on cross examination is the only foundation for getting rid of the effect of evidence in chief, it was harmless error to overrule motion to exclude the evidence in chief. Besides the court is not bound to exclude evidence brought out by a party on motion of such party, even if it might be properly done.

9. *Same; Review; Harmless Error; Method of Production of Evidence.*—In an action for trespass on land plaintiff objected to the offer in evidence of certain mortgages as a part of defendant's chain of title, upon the grounds that they had been cancelled in a chancery suit; whereupon plaintiff offered to introduce the chancery file; the defendant objected to the introduction of the chancery file; upon the ground that while the judgment therein decreed, the satisfaction and cancellation of the mortgage, it did not show that the mortgagee was not entitled to possession on the face of the papers at the time of the trespass. Held, that the defendant acquiesced in the plaintiff's mode of presenting the question, and inasmuch as the chancery record showed that the mortgages were in fact paid, thereby divesting the title out of the mortgagee, defendant is not injured by the action of the court in overruling objection to the chancery file, or in sustaining plaintiff's objection to the introduction of the mortgages; and this, although, the proper course would have been to admit the mortgages, whereupon plaintiff would have had the right to offer the chancery file.

10. *Bill of Exceptions; Construction.*—The bill of exceptions is construed most strongly against the exceptor and this court will not indulge any intendment to put the trial court in error.

[Union Naval Stores Co. v. Pugh, et al.]

11. *Corporations; Trespass; Pleading; Variance.*—The complaint against a corporation for trespass is supported by evidence of actions of trespass committed by an employe of the corporation, although it is not shown that the act of the employe was ordered or ratified by the stockholders or directors.

12. *Same; Corporate Liabilities; Officer or Agent; Trespass.*—One employed by a corporation engaged in the turpentine business who has power to employ and discharge servants or agents and to do whatever is necessary for the performance of the corporate business within his territory, is a vice principal for whose acts in trespass done in performance of the corporate business, the corporation is liable.

13. *Same; Agency for Corporation; Jury Question.*—The evidence in this case examined and held to require a submission to the jury for determining whether one who committed a trespass was acting as the agent of a corporation.

14. *Trespass; Pleading; Variance.*—Where the complaint alleged a trespass by cutting and boxing trees in, towit, the years 1902-3-4, and the evidence of plaintiff showed that the trees were boxed at the proper season in 1902, and that thereafter, the crude turpentine was dipped from the boxes from time to time, and the boxes and trees chipped during each year to renew or increase the flow of gum, there was not a variance on the ground that the complaint set up a continuing trespass and that the proof showed a series of distinct trespasses.

APPEAL from Clarke Circuit Court.

Heard before Hon. NORMAN GUNN, Special Judge.

Action by Martha Pugh and others against the Union Naval Stores Company, for trespass to realty. Judgment for plaintiff's and defendants appeal. Reversed and remanded.

R. W. STOUTZ, for appellant. The court erred in declining to require the attorneys to show their authority to represent Mamie Chapman.—Sec. 594, 1896; *Brewer v. Watson,* 71 Ala. 299. The court erred in admission of evidence as to agency.—*Robinson v. Aetna Co.,* 128 Ala. 480; *Ala. Co. v. Long Clothing Co.,* 122 Ala. 967; *Learned Letcher Lbr. Co. v. Ohatchie Lbr. Co.,* 111 Ala. 453; *Postal Tel. Co. v. Lenoir,* 107 Ala. 640; *St. L. & T. R. Packer Co. v. McPeters,* 124 Ala. 451. The court erred in refusing to permit the mortgages to be introduced in evidence, and in permitting the introduction of

the chancery file in evidence.—*Hough v. McLeod,* 76
Ala. 419; *Fields v. Clayton,* 117 Ala. 538; 20 A. & E.
Ency of Law, pp. 1012 and 1013; *Bank v. Pullin,* 129
Ala. 638. The counts are for trespass by the corporation,
and the evidence discloses acts of trespass, by an agent.
—*Cent. of Ga. Ry. Co. v. Freeman,* 140 Ala. 581; *City
Del. Co. v. Henry,* 139 Ala. 161; *Southern B. T. & T. Co.
v. Francis,* 109 Ala. 224. The complaint declares for a
continuing trespass; the evidence shows several distinct
and separate trespasses.—*Abercrombie v. Wyndham,*
127 Ala. 129.

W. D. DUNN, and A. L. MCLEOD, for appellee. The
court properly allowed the amendment.—*Lowery v.
Rowland,* 104 Ala. 420; *Godbold v. Blair,* 27 Ala. 59.
Section 3331, Code 1896. The plaintiffs had a right to
join their co-tenant as a party plaintiff without showing
any especial authority therefor.—*Daughdrill v. Daugh-
drill,* 108 Ala. 321.—Section 594, Code 1896. The fact
of agency was a question for the jury in this case.—61
Ala. 139; 52 Ala. 606; 49 Ala. 119. Defendant cannot
justify its trespass under a void deed, especially where
they had notice, and a pending suit is notice.—100 Ala.
421; 88 Ala. 557; 75 Ala. 393; 62 Ala. 550. The tort
was committed intentionally and with force, and tres-
pass is the proper remedy.—104 Ala. 514; 59 Ala. 457;
6 Cyc. 86.

DENSON, J.—This action was commenced by Martha
Pugh and Sery Pugh against the Union Naval Stores
Campany, a corporatioon, to recover damages for tres-
pass to realty. The evidence of the first witness exam-
ined in behalf of the plaintiffs developed the fact that
another person (Mamie Chapman) was a tenant in com-
mon with the plaintiffs of the land, and that they three

[Union Naval Stores Co. v. Pugh, et al.]

owned the land in common. Thereupon, on motion of the plaintiff's counsel and against the objection of the defendant, the complaint was amended by making Mamie Chapman one of the parties plaintiff. After the amendment was made the "defendant moved the court to require plaintiffs attorneys to show the authority by which they assumed to represent said Mamie Chapman and make her a party to the cause. Mamie Chapman was not then in court in person, and was not theretofore represented in the cause." This motion was overruled, and the action of the court in overruling it is the foundation for the first ground in the assignment of errors that is insisted upon. Confessedly Mamie Chapman was a proper party plaintiff, and the amendment of the complaint, at any time before the jury retired, by the insertion of her name as a coplaintiff, was authorized by the statute. Civ Code 1896, § 3331. The legal interest in the cause of action resides in all three of the present plaintiffs; and any one of them, in the first instance, could have used the names of all as plaintiffs, either with or without consent. Mamie Chapman, on proper application, may be protected by an indemnity against costs from those prosecuting the suit; and if she were there in person that would be the extent of her right to arrest or impede the prosecution of the suit. Having the legal right to make her a party, no authority to counsel was necessary to be shown. Section 594, Civ. Code 1896, is inapplicable, and the motion of the defendant was properly overruled.—*Harris v. Swanson & Bro.,* 62 Ala. 299; *Bolton v. Cuthbert,* 132 Ala. 403, 31 South. 358, 90 Am. St. Rep. 914.

It is elementary that, to make the defendant corporation liable for the act of the person or persons who "boxed" the timber, it must be shown that such person or persons were at the time agents of the corporation,

and acting within the scope of their authority. Furthermore, the declarations or conduct of one professing to act as agent of another cannot be received as evidence against the principal, without independent proof of his agency. Nor are the declarations of an agent or officer of a corporation "competent evidence against his principal, unless made within the scope of his authority and while in the discharge of his duties in and about the particular transaction of which they constitute a part of the res gestæ." *Buist v. Guice*, 96 Ala. 255, 11 South. 280; *Postal Telegraph Co. v. Lenoir*, 107 Ala. 640, 18 South. 266; *Danner Land & Lumber Co. v. Stonewall Insurance Co.*, 77 Ala. 184; *Bessemer Coal, Iron & Land Co. v. Doak*, 152 Ala. 166, 44 South. 627, 12 L. R. A. (N. S.) 389;; *Learned-Letcher Lumber Co. v. Ohatchie Lumber Co.*, 111 Ala. 453, 17 South. 934; *George v. Ross*, 128 Ala. 666, 29 South. 651. Applying the foregoing principles to the evidence of the witness W. A. Smith, it is clear that the declarations of Gordon and Brewer, testified to by him, were not competent evidence to show agency, and, on a proper objection made, doubtless would have been excluded by the trial court. We are bound, however, in reviewing on appeal the rulings of the court below on objections to, and motions to exclude, evidence, to confine our consideration to the specific grounds assigned for the objections and motions; the presumption being that the court below ruled with reference to the specific questions presented. Now, the proposition presented to the circuit court in respect to the exclusion of witness Smith's evidence, as it appears by the bill of exceptions, was stated thus: "Thereupon the defendant made a motion to exclude all the testimony of the witness Smith concerning the agency of said Gordon as an agent of defendant company, on the ground that the declarations and actions of the alleged witness are not proof of agency, and no independent

proof of agency had been introduced." It might be suggested that the word "agent" was intended for the word "witness," where it appears in the proposition, after the word "alleged"; but we have no authority for indulging such an intendment, especially if it would operate to put the trial court in error. Bills of exceptions are construed most strongly against the party taking the exception.—*McGehee's Case,* 52 Ala. 224. It is clear that the ruling of the court on the motion is without error, as no declarations of the "witness" were offered in evidence.

But would the exclusion of the evidence assailed have accomplished what the defendant really desired, to wit, the exclusion of the evidence of the witness Smith on his direct examination? Was not the evidence brought out on the cross-examination the only foundation for getting rid of the effect of his evidence in chief, either by motion to exclude that evidence or by instructions to the jury? In this view, it would seem that, if the action of the court in overruling the motion involved error, injury from such error is affirmative rebutted by the record. The action of the court in overruling the motion to exclude the evidence in reference to Smith's conversation and transaction with McDonald at the office of defendant in Mobile" finds sufficient justification in the fact that it was brought out by the defendant, and the court was under no duty to exclude it on the motion of the party who brought it out, even though it might have properly done so.—*Osborne's Case,* 125 Ala. 106, 27 South. 758; *Toliver's Case,* 94 Ala. 111, 10 South. 428; *Dickens' Case,* 142 Ala. 49, 39 South. 14, 110 Am. St. Rep. 17:

The fact that the taxes assessed against the defendant for the years 1902-03 and 1903-04 were paid by Gordon may not of itself be competent evidence to show that Gordon was the agent of the company, with authority

to bind it for cutting or boxing the timber; but it must be remembered that evidence aliunde tending to show agency of Gordon as manager for defendant, and a recognition by defendant of that agency, had preceded this offer to show payment of taxes, and on this considera-tion we think the court committed no error in allowing proof that Gordon paid the taxes as a circumstances tending to show agency.

The lands on which it is averred the trespass was committed were patented to Isham Pugh, and at his death, which occurred in 1894, the plaintiffs in the cause succeeded to his title. During his lifetime Isham Pugh executed two mortgages on the lands to one Molton to secure an indebtedness due from him to Molton. The defendant offered the mortgages as evidence, and proposed "to connect said mortgages so offered in evidence, by a direct and unbroken chain, with the defendant in the cause." The plaintiff objected to the mortgages as evidence, on the ground "that litigation had taken place, between Martha Pugh and others and the C. W. Zimmerman Manufacturing Company, about these mortgages, and the mortgages had been canceled by said litigation." In support of said objection, the record shows: "The plaintiffs offered in evidence the entire record of the chancery cause of Martha Pugh against C. W. Zimmerman, wherein said mortgages were decreed to be canceled." The defendant admitted that the mortgages offered were the identical mortgages involved in the chancery litigation, "but objected to the introduction of the record of said chancery suit, because, while convinced that the decree decreed the satisfaction of said mortgages and ordered their cancellation, it did not shows that the mortgagee was not entitled to possession on the face of the papers at the time of the alleged trespass in this case." This mode of procedure was irregular. The

proper course would have been for the court to admit the mortgages, whereupon the plaintiff would have had the right to offer the record in evidence, for the purpose of showing an extinguishment or cancellation of the mortgages; but the defendant seems to have accepted the mode resorted to by the plaintiff for determining the admissibility of the mortgages as evidence. It is sufficient answer to the defendant's specific objection made to the introduction of the chancery record to point out the facts that the register's report, found in the chancery record, and upon which the decree of cancellation is based, shows that the mortgages were fully paid in the year 1892. The statute (Civ. Code 1896, § 1067) provides: "The payment of a mortgage debt, whether the mortgage is of real or personal property, divests the title passing by the mortgage." This being true, there could not have been any right in the mortgagee to possession of the land at the time the trespass was committed. It follows that no injury resulted to the defendant from the action of the court in overruling defendant's objection to the chancery record or in sustaining plaintiff's objection to the introduction of the mortgages.

There was no error in the ruling of the court sustaining plaintiffs' objection to the question, propounded to the witness: "Did Martha Pugh ever execute to you a deed conveying 20 acres of the land involved in this suit?" Aside from the indefinite form of the question, it called for a matter of which the deed was the best evidence—secondary evidence. without laying a predicate therefor.

The defendant requested the general affirmative charge in writing, which was refused by the court. It is insisted that it should have been given, on the theory that there is no evidence whatever of a direct participation by the defendant company in any trespass; in

other words, that the acts of trespass, if any were committed, were those of an agent or employe. It is true the cause of action is trespass; but it does not necessarily follow from this that the defendant cannot be held, even though the proof shows that the trespass was committed by an employe and fails to show any action on the part of the stockholders or directors ordering the act or ratifying it. 2 Morawetz on Corporations (2d Ed.) § 725. "The doctrines in respect of the relations of principal and agent, and master and servant, as applicable to the acts and contracts of corporations, are well established. It is not essential to an act or contract which binds a corporation that it be done, or entered into, or authorized, by the corporate entity itself, as represented by the governing board of stockholders. It is well recognized in the law that corporations, in carrying out corporate functions, may, and of necessity do, create vice principals, who, in respect of the departments of corporate business intrusted to their general control and management, partake of the corporate entity, and their acts and contracts, in execution of the functions they represent, are of the same effect and import as if done and entered into, or directly authorized, by vote of the governing board of stockholders."—*Southern Bell Telephone Co. v. Francis*, 109 Ala. 224, 242, 19 South. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930.

And now (paraphrasing a part of the opinion in the case above quoted from), suppose the defendant was engaged in the naval stores business, and as a part of its business boxed timber and gathered crude turpentine from the boxes, and carried on this business in Clarke county; and suppose, further, that it confided to a general manager or agent or superintendent the execution of this business in said county, endowed him with ample powers and means to carry on the business. to

employ and discharge subordinate agents and servants, and, generally, to do whatever might be necessary to its performance of its corporate functions in that county. Such a person, with reference to the public, is more than mere agent acting under orders of a superior. He is pro hac vice a principal. He stands for, and represents, within the sphere of his authority, the corporate entity itself, and his acts are the direct acts of the corporation itself; and if, in his representative character, he commits a trespass, or commands or authorizes its commission by a servant under his orders, the corporation is suable for the wrong in the action of trespass. It is the contention of the plaintiffs in this cause that the defendant company was in this precise category; that Gordon was its general agent in respect to boxing timber and procuring crude turpentine from the boxes, with power to employ servants. If it cannot be held that the evidence affords no reasonable inference in support of the contention, then the affirmative charge was properly refused, so far as the theory under discussion is concerned.

Brewer, a witness examined by the defendant, testified that he worked during the years 1901-02 on a turpentine farm in Clarke county under Mr. Meigs; that after Mr. Meigs, Mr. Gordon came, and after Mr. Gordon came a man named Bynam; that witness boxed the timber on the Martha Pugh lands in the year 1901-02; that the boxing was done properly. "We did not girdle the trees. I worked for four years for the company; changed companies. Meigs, Gordon and Bynam were my bosses during those years, and I did not know who they were working for. Gordon was in charge when I boxed the Pugh land. * * * I saw that the trees were not boxed so as to kill them. * * * I worked it [the timber] part of three years under the instructions of Gordon.

I bossed the woods crew. Aunt Martha Pugh told me not to box it. I told her I had orders of Mr. Gordon and Mr. Pritchett to cut it." . On the cross-examination of the plaintiffs' witness Smith, the defendant brought out the fact that Smith sold his timber to Gordon, that "the papers were made to said Union Naval Stores Company, and said Gordon gave a draft on said company and the draft was paid." Gordon signed the draft with his own name as agent or manager. This evidence of witness Smith, while it may have no direct connection with the particular issues tried, may be considered as illustrative of the general nature of the business intrusted to Gordon.—*Birmingham, etc., R. R. Co. v. Tenn. Coal, Iron & R. R. Co.*,127 Ala. 137, 145, 28 South. 679. It seems clear to us that the tendencies of the evidence are such as to make it a question for the jury to determine as to whether Gordon was the agent of the defendant and the extent of his authority, and that the evidence affords an inference in support of the plaintiff's .contention as stated. Therefore, in respect to the theory we have been discussing, the affirmative charge was well refused.

The court gave the general affirmative charge requested in writing by the plaintiffs. From what has been said in the discussion of the defendant's request for the affirmative charge, it is clear that the action of the court in giving the charge for the·plaintiffs was reversible error, as the charge invaded the province of the jury. But it is argued that the affirmative charge should have been given upon the theory of a variance between the allegations of the complaint and the proof, in that the complaint is for a continuous trespass, while the proof shows that the acts constituting the trespass were not continuous from day to day. The case of *Abercrombie v. Windham,* 127 Ala. 179, 28 South. 387, has been cited

by appellant's counsel as authority conclusive of the correctness of his contention. The facts of that case, we think, clearly differentiate it from the case in hand. There the complainant claimed damages for trespass by defendant's stock from the 8th day of May to 20th day of July. Manifestly this showed that the stock were on the lands every day between the two dates, a continuous trespass, whereas the evidence showed several separate and distinct trespasses between the two dates; and this court held that the trial court should have charged, as requested by the defendant, that "if the jury believe the evidence they will find for the defendant." Here the complaint is for a trespass on lands, in "cutting and boxing trees in, to wit, the years 1902, 1903, and 1904." The evidence tends to show that the defendant was carrying on the business of extracting crude turpentine from pine trees; that, following its method of working, the trees were boxed at the proper season in 1902, and when the turpentine would run down into the boxes it was dipped; that it was necessary each year to chip the boxes or trees, so as to renew or increase the flow of the gum; that, while the dipping and chipping was not done every day, yet as the boxes would fill, the defendant's servants would at the proper times return to the orchard and dip the gum from the boxes; and that this was done during the three years named. So that we have, following each act, a purpose of repetition—of returning to carry on the business installed; and we are of the opinion that this presents an entirely different case from that of disconnected trespasses by stock. And this conclusion precludes *Abercrombie v. Windham, supra,* from being a controlling authority here.

The judgment appealed from will be reversed, and the cause remanded.

Reversed and remanded.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.