153 So. 751

# PROTECTIVE LIFE INS. CO. v. MOORE.

## 3 Div. 101.

Supreme Court of Alabama.
March 22, 1934.

Rehearing Denied April 12, 1934.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

Ball & Ball and Frontis H. Moore, all of Montgomery, for appellee.

KNIGHT, Justice.

As we see it, there is really but one question for determination in this case, and that is, Was the defendant's plea 3 subject to the demurrer assigned thereto? If it was not, the case must be reversed; if it was insufficient, and subject to plaintiff's demurrer, an affirmance of the judgment must follow.

We say this, because, construing the plea most strongly against the pleader, there is no substantial difference between the facts averred in the plea, and those appearing in the agreed statement of facts.

From the plea it is made to appear that the policy was issued upon the application in writing of Alabama Lodge of Perfection No. 1, and by its terms any sum payable by the company as a death claim shall be paid at the home office of the company to Lodge of Perfection No. 1.

It fully appears also from the plea that the Alabama Lodge of Perfection No. 1, a corporation existing under the laws of the state of Alabama, undertook the erection in Montgomery of a building, known as the Scottish Rite Temple, and solicited subscription to defray the expense of constructing the building from its members; and promised subscribers to insure their lives in the Franklin Life Insurance Company, *or other responsible company*, "payable at the death of said subscriber," in an amount double the subscription. The insurance to be paid to such person as might be designated by the subscriber, and the lodge issued "certificates of indebtedness" to the subscribers, in which various beneficiaries were named. A copy of such certificate so issued was made a part of the plea. That whatever contract was made with the original insuring company—the Franklin Life Insurance Company—was "cancelled by mutual consent" previous to January 29, 1931, and that on said day—January 29, 1931—the said Alabama Lodge of Perfection No. 1 made application to the defendant for a policy of "group insurance on the modified life plan," and a copy of the policy issued by the defendant and a copy of the application were made a part of the plea, marked Exhibits A and B.

In its said plea, the defendant admitted that J. Johnston Moore, was one of the persons whose lives were insured under said policy marked Exhibit B, and that certificates in the form of Exhibit X were issued in his behalf. The plea admits the death of said J. Johnston Moore, and that due proof of such death had been furnished the defendant.

In exoneration from further liability under said policy, by reason of the death of said Moore, the defendant averred that at the time said proof of death was furnished, it, the Alabama Lodge of Perfection No. 1, was indebted to the defendant for a past due premium note and past due premium, and that by an arrangement made with the said lodge, the defendant set off the amount due upon the policy, arising from the death of said Moore, against the indebtedness of the lodge for premiums, and which indebtedness exceeded the amount of said insurance.

Ordinarily, the policy contract is the measure of the rights of everybody under it. Morgan et al. v. Prudential Ins. Co. of America, 209 Ala. 110, 95 So. 355. But what constitutes the policy contract? Confessedly, the application was written into the contract of insurance, and became an integral part of it, by its very terms. This application in the first two paragraphs is illuminating, and sheds considerable light upon the situation, the surroundings of the parties, and the purposes in view of the contracting parties. These two paragraphs read:

"Application is hereby made to the Protective Life Insurance Company for a *group policy* on the *modified life* plan, with premiums payable quarterly, to insure the lives of the members of the undersigned, Lodge of Perfection No. 1, located at Montgomery, Alabama, herein designated as the applicant.

"The said members, named in the schedule of members *attached hereto and made a part hereof*, comprise all of the members who have contributed toward the construction of the Scottish Rite Temple at Montgomery and are to be insured for *double the amount contributed*." (Italics supplied.)

Attached to this application is a long list of such subscribers, *and the amount subscribed by each.*

The policy contract, among other provisions, provides:

"The only members insured hereunder are those listed in the schedule of members insured attached hereto and shall be insured *for the amounts contained in said schedule.*

"Any sum payable by the company as a death claim shall be paid at the Home Office of the Company to Lodge of Perfection No. 1, of Montgomery, Alabama." (Italics supplied.)

The plea, as heretofore pointed out, admits that beneficiary certificates were issued to said J. Johnston Moore, by the Alabama Lodge of Perfection No. 1, and a copy of the

form of such certificate is attached to and made a part of defendant's plea 3. This certificate acknowledges that this insured had paid to the lodge a certain sum of money, and for which the lodge obliged itself to purchase a life insurance contract on the life of said subscriber Moore, payable in a certain named sum of money, and to pay all premiums thereon, and upon receipt of said sum said life insurance company, after the death of said subscriber, to pay such person as may be designated by the said subscriber.

Construing defendant's said plea 3 most strongly against the pleader, the conclusion is inescapable, that the Alabama Lodge of Perfection No. 1, had secured subscriptions to build its temple from certain of its members by an assurance that it would purchase, and deliver to such subscribers, insurance upon their lives for amounts double the amount of their respective subscriptions, payable to the designated beneficiaries of such subscribers on their respective deaths.

The terms of the application and policy, as well as the admitted facts in the plea, leave no room to doubt that the defendant, at the time it issued its said policy, knew the true situation then existing, and the full purpose of the Alabama Lodge of Perfection No. 1 in procuring the insurance, and of its contract obligation to the subscribers to the building fund, and that while the insurance upon the death of a subscriber was payable to the said Alabama Lodge of Perfection No. 1, it was so payable as a matter of convenience, and for the use and benefit of the subscriber's designated beneficiaries, and the defendant, for aught averred to the contrary, was aware of such fact.

It is said in 7 Cooley's Briefs on Insurance 6346: "Where a policy or certificate is made payable to a designated beneficiary, such beneficiary is entitled to the proceeds as against all other persons, *provided there are no equitable circumstances requiring a different disposition of the fund.*" (Italics supplied.)

■ It is insisted that this principle of law must govern in this case. If there were no equitable circumstances requiring a different disposition of the funds, and nothing in the circumstances of the case, apparent on the face of the contract, or brought home to the insurer, we would feel disposed to give our ready assent to the proposition. But the plea, by its averments of fact, and its admissions, shows that while the Alabama Lodge of Perfection No. 1 had the right to collect the insurance, in doing so, it would be acting as the agent of the designated beneficiary, if any,

of said J. Johnston Moore. This being true, it was not permissible for the defendant and said lodge to enter into any agreement whereby the money of the principal—the insured—could be applied to the payment of the agent's indebtedness to the defendant. If entitled to receive the insurance money, it must collect the money. Hopkins v. Jordan, 201 Ala. 184, 77 So. 710.

■ In 8 Couch, § 2094, it is stated:

"Parties to action on policy of group insurance.—Since a contract for group insurance is between the employer and the insurer for the benefit of the employee, the right of action by the employee or his beneficiary or representative is against the insurer, and not against the employer, between whom and the employee there is no contract of insurance. In other words, since the purpose of group insurance is to insure the lives of employees for their benefit, they are the real parties in interest, and even though the employer is the nominal beneficiary, he is merely a trustee of the employees, *or an agent for distribution,* and the beneficiary or his personal representative is the real party in interest, and may sue on the contract, even though the policy was a gift." (Italics supplied.)

This rule finds direct support in the cases of Gallagher v. Simmons Hdw. Co., 214 Mo. App. 111, 258 S. W. 16; Carpenter v. Chicago, etc., R. Co., 21 Ind. App. 88, 51 N. E. 493; State v. St. Louis & S. F. Ry. Co., 125 Mo. 596, 28 S. W. 1074; 31 Corpus Juris 967.

The case of Carruth v. Ætna Life Ins. Co. et al., 157 Ga. 608, 122 S. E. 226, 230, while tried upon equitable petition, presents questions very similar to those involved in the present litigation. In that case the Lanette Cotton Mills secured from the Ætna Life Insurance Company a group policy of insurance upon the lives of its employees. Certificates of insurance were issued to its employees by the Lanette Cotton Mills of Lanette. To the application of the Lanette Cotton Mills (which was made a part of the policy) for the group insurance is attached a descriptive list of the persons whose lives are to be insured by said policy, and each is described as an employee of the Lanette Mills.

Ethel Harmon, one of the employees insured, died, and her administratrix filed a petition against the Ætna Life Insurance Company and the Lanette Cotton Mills to recover the insurance money. Both defendants separately demurred to the petition upon the grounds, inter alia, that the petition failed to state a cause of action, and failed to show any contractual relation between the defend-

ant and the plaintiff's decedent. The superior court sustained the demurrers and dismissed the petition. On appeal, the Supreme Court of Georgia reversed the judgment of the superior court in sustaining the demurrers, and in dismissing the petition.

Chief Justice Russell, in speaking for the court in the above case, observed: "The insurance company promises to pay upon the life of any one of those embraced in group policy No. 379 the particular sum indicated by the certificate held by the person insured. The payment is to be made to the Lanette Cotton Mills. The use of the two following words 'as beneficiary' has no significance beyond a narrow technical meaning, when considered in connection with the certificate; for the certificate confines the possession of the fund to the mere duty of paying the money over to the holder of the certificate in return for the certificate, with the duty on the part of the Lanette Mills to convey this certificate to the insurance company for cancellation.
* * *

"Construing the contract as a whole, it seems clear that the Ætna Life Insurance Company, subject to the conditions in the policy, undertook to insure the life of Ethel Harmon and her fellow employees, merely using the name of the Lanette Cotton Mills as beneficiary in order to protect itself, by such conditions precedent and warranties as are contained in the application, from liability where it would not have been legally bound under these warranties; and using the services of the Lanette Cotton Mills as an agency to see that the insurance money is paid to the proper persons, and that in all cases the canceled certificate, which indicated a decrease of the insurer's risk, should be returned to the insurance company."

There is nothing in the case of All States Life Ins. Co. v. Tillman, 226 Ala. 245, 146 So. 393, that aids the appellant in his contention in this case. On the contrary, it is there pointed out that a group policy must be construed as a liberal blanket contract for the protection of the insured.

The plea shows that it was the purpose of the Alabama Lodge of Perfection No. 1 to apply to the defendant for, and it did in fact apply for, a policy of group insurance on the modified life plan covering a certain designated class of its members, viz., those who had subscribed to the building fund of the contemplated temple, and that such a policy was issued, and it obtained such a policy.

In Cooley's Briefs on Insurance, at page 782, it is stated that this form of insurance—group insurance—came into vogue since the year 1911. The author defines such contracts as the insurance, by a single or blanket policy, of a large number of individuals as a group, each individual receiving a certificate of insurance. It is usually applied to the employees of large industries—as for example a railroad—the employer assuming responsibility for the premium. As the policy covers a group, no medical examination is required, unless a survey of a group discloses that as a group it is subnormal or exposed to unusual health hazards.

The very term "group insurance," ex vi termini, implies that it is taken out, in blanket form, by some person, or corporation, to insure the lives of a number of persons, not for the benefit of the one procuring the blanket policy, but for the persons composing the class. An application for such a policy gives the insurer notice that the insurance is intended for the persons composing the group, not for the benefit of the one making the application, and who is the nominal beneficiary in the policy. The fact that a certificate may or may not be issued to each member of a class, to evidence his inclusion therein, although possibly contemplated, cannot defeat an action on the policy in a proper case. We think this conclusion is fairly deducible from the holding in our recent case of All States Life Ins. Co. v. Tillman, supra.

It is our conclusion that the application and policy issued thereon, together with the facts admitted in defendant's plea 3, show that the policy of insurance sued upon was issued for the benefit of the persons designated in the application; that they were and are the real beneficiaries in said policy; and that defendant's said plea was subject to the demurrer interposed thereto.

It follows, therefore, that the judgment of the circuit court must be affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.