12 So.2d 353

## NATIONAL LIFE & ACCIDENT INS. CO. v. COLLINS.
### 6 Div. 116.

Supreme Court of Alabama.
Feb. 11, 1943.

Rehearing Denied March 25, 1943.

McEniry & McEniry, of Bessemer, for appellant.

Ross, Ross & Ross, of Bessemer, for appellee.

**THOMAS, Justice.**

The suit was for recovery on life insurance policies. There was conflict in the evidence as to whether or not the policies lapsed for the non-payment of premiums.

The rule as to the procuring or reinstating lapsed life insurance policies by misrepresentation of material facts has been fully discussed and restated in New York Life Ins. Co. v. Zivitz, Ala.Sup., 10 So.2d 276, 278,[1] where the court observed: "Misrepresentations made in an application for insurance will not defeat or void a policy of insurance unless it appears that: (1) The representations were false; (2) they were made either with the actual intent to deceive, or unless the matter misrepresented increased the risk of loss; and (3) the insurer relied upon them to his prejudice. Sovereign Camp, W. O. W. v. Moore, 232 Ala. 463, 168 So. 577; Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524."

In Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524, 525, it is declared of contract stipulations: "Such contract stipulations are held valid and enforceable as misrepresentations or warranties, under the meaning of section 8364 of the Code [Code 1940, Tit. 28, § 6]; (Brotherhood of Railway, etc., Employees v. Riggins, 214 Ala. 79, 107 So. 44; Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335; Independent Life Ins. Co. v. Butler, 221 Ala. 501, 129 So. 466; Life Ins. Co. of Va. v. Newell, 223 Ala. 401, 137 So. 16), and, to avoid the policy, unsound health must be misrepresented with intent to deceive and as being material to the risk, or as materially increasing the risk of loss (Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714; Life Ins. Co. of Va. v. Newell, supra). There are types of fatal maladies of which the courts take judicial knowledge, such as 'tuberculosis and cancer,' as being material to the risk of insurance; the courts take no such judicial knowledge of or as to the several forms of diseases, such as syphillis, cirrhosis of the liver, or other ailments alleged in the pleas. Louisiana State Life Ins. Co. v. Phillips, 223 Ala. 5, 135 So. 841; Southern Life & Health Ins. Co. v. Morgan, 216 Ala. 529, 113 So. 540; Miller v. Metropolitan Life Ins. Co., supra; Brotherhood etc., v. Riggins, supra; Brown, Adm'x., v. Greenfield Life Ass'n, 172 Mass. 498, 53 N.E. 129; Independent Life Ins. Co. v. Seale, supra; Mutual Life Ins. Co. v. Mankin, 223 Ala. 679, 138 So. 265."

In the consideration of the usual form of ordinary life policies in Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 378, 153 So. 755, 756, it is declared: "It is established that a provision in a life insurance policy that 'no obligation is assumed under' the policy 'prior to its date and delivery nor unless on said date of delivery the insured is alive and in sound health' is a reasonable and valid limitation of the contract. Such clauses have been construed as enforceable as a warranty, or of that effect, if at the time of the issue and delivery of the policy the insured is (1) afflicted with a disease that increased the risk of loss; or (2) there is a misrepresentation made with the actual intent to deceive, and which relates to a material fact, as materially increasing the risk of loss. Such breach of warranty or vitiating misrepresentation will defeat the policy so issued and delivered if the insurer relied on them. Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524; Metropolitan Life Ins. Co. v. Usher, 226 Ala. 314, 146 So. 809; Bankers' Credit Life Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23; Heralds of Liberty v. Collins, 216 Ala. 1, 110 So. 283; Southern Life & Health Ins. Co. v. Morgan, 216 Ala. 529, 113 So. 540; North Carolina Mut. Life Ins. Co. v. Kerley, 215 Ala. 100, 109 So. 755; Brotherhood of Railway & Steamship Clerks, etc., v. Riggins, 214 Ala. 79, 107 So. 44; Miller v. Metropolitan Life Ins. Co., 214 Ala. 4, 106 So. 335; Empire Life Ins. Co. v. Gee, 171 Ala. 435, 55 So. 166; New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663."

Such are the well-established rules that obtain in this jurisdiction as to procuring and reinstating of lapsed policies of life insurance and being in life when the delivery or the reinstatement of the policy is accomplished.

The instant policies contain provisions that the entire agreement between the company and the insured and the holder or

owner of the policy is stated in the contract. That its terms cannot be changed or conditions varied, except by written agreement of the president or secretary of the company. That no other person shall have the power to delete contracts, waive forfeitures or receive premiums on policies in arrears more than four weeks or to receipt for the same, and that such arrears receipt by agents or employes "shall not be credited upon the policy, whether receipted for or not, except as provided in paragraph entitled 'revival'."

The pertinent provisions of revival are: "Should this policy become void in consequence of nonpayment of premium, if not more than fifty-two premiums are due, it may be revived at the option of the Company upon written application of the insured showing satisfactory evidence of insurability, and upon payment of all premiums in arrears; provided that the Company's consent to such revival shall appear by endorsement hereon, and that there shall be no liability whatever under this contract for any disability or death resulting from an accident occurring or illness contracted or commencing prior to date of revival endorsement hereon as aforesaid."

Such are the pertinent provisions contained in the policy of appellant issued on August 13, 1934.

On March 29th, 1937, the defendant insured decedent under a policy of insurance against illness, accident and death. The beneficiary in both policies was the wife of insured, appellee here. Pertinent provisions of the last policy are:

"This policy shall not lapse for nonpayment of premiums until the premiums for four (4) weeks are in arrears; the insured, however, shall not be entitled to sick or accident benefits when premium payments are in arrears for two (2) weeks or more, and the subsequent payment of such arrears shall not entitle the insured to benefits for sickness or disability beginning or occurring during the period of such arrears. Should the insured die when the premium payments on this policy are four (4) weeks or more in arrears this company shall not be liable for any sum under this policy except as otherwise expressly provided herein.

"No person, other than the President or the Secretary of the Company, is authorized nor has the power to make, alter or discharge this contract, waive forfeitures or to receive premiums on policies in arrears more than four weeks, or to receipt for the same in the receipt book, and all such arrears given to an agent shall not be credited upon the policy whether entered in the receipt book or not, except as herein provided. Policies having lapsed may be revived at the option of the Company upon written application of the insured showing satisfactory evidence of insurability, and upon payment of all premiums in arrears; provided that the Company's consent to such revival shall appear by endorsement in the space provided, and that there shall be no liability whatever under this contract for any disability or death resulting from an accident occurring or illness contracted or commencing prior to date of revival endorsement hereon as aforesaid."

Further provisions of each policy of the assured were to the effect that if the applicant had prior to the date of issue suffered with certain diseases, among which is named "diseases of the heart," no obligation is assumed by the company.

Evidence of the assistant manager of the defendant is to the effect that both policies had a grace period of four weeks, and that the same lapsed for nonpayment of premiums according to their books on the 29th day of April, 1940, the date of the last payment of premiums being March 28, 1940. The defendant's lapsed records were duly identified and offered in evidence showing such dates.

■ The evidence for the plaintiff tended to show that payments of premiums on both policies were duly made by the beneficiary to the agent of the company. In this respect the evidence is in sharp conflict and made a case for the jury. McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

The defendant's evidence tended to show that after the date indicated as a lapse of the policies, the assured was working for the Republic Iron & Steel Company, and went to the company's physician for treatment, who found that the insured was suffering from high blood pressure and he was sent to the Norwood Clinic for a further check up. In his diagnosis the company's physician found that assured was suffering from hypertension, which the evidence shows was an ailment of kidneys and heart, and this was during the month of May, 1940.

The attending physician with the Norwood Clinic stated that he made the X-ray sheets dated May 6, 1940, when he ex-

amined the insured and found his heart enlarged thirty per cent, and that a human being with such heart enlargement would not attain that physical condition suddenly, and that his opinion was that he had suffered with this ailment for some time.

A further practicing physician connected with the Norwood Clinic stated that he made report on assured's case and found, and so reported, that his was heart was enlarged and his blood pressure was two hundred twenty over one hundred forty. He further gave as his opinion that with such a blood pressure one cannot work very long without panting for breath and that he would not expect a man to live long with such blood pressure. That such condition would increase the insurance risk on such a life. That a human being with hypertension would not be in sound health, and may die suddenly if he got a stroke.

Defendant's evidence tended further to show that after going to the Norwood Clinic on May 30, 1940, insured made application for revival of his policy and paid the $2.35 with the understanding, under the revival application, that the policy would only be reinstated upon approval of the company and upon satisfactory evidence of insurability. In this application for revival the date is indicated as May 30, 1940, and he stated in the same that he was in sound health and had not been attended by a physician.

The evidence further shows that thereafter on June 17, 1940, the revival endorsement on the policy was executed at the home office of the company and was made with the provision that the insured should then be of sound health.

On June 11, 1940, the insured made application for the revival of the second policy, paid $3.20, which was the premium in arrears, and the three weeks' premium due during the course of revival. This application was signed with the understanding that the policy would not be approved by the company except upon satisfactory evidence of insurability, and that the applicant was in sound health at the time of signing said application. On June 24, 1940, this application was approved at the home office, with the endorsement that this revival was void unless the insured, under the original policy is alive and in sound health at the date hereof and no liability is assumed for death or disability due to causes originating prior to this date. These several endorsements were delivered to the insured to be attached to the respective policies.

The testimony further shows that if the premium cards had been in evidence, they would show that this was a revival; bear the dates of revival, and the date the money was collected for the revival of the policies.

The evidence further shows that at such time insured's wife had a policy with the defendant and that her policy was not reinstated and application for revival was made by the insured Martin Collins.

Replying to these tendencies of evidence, adduced for the defendant, plaintiff offered her statement of due and prompt payment of premiums at all times to the company's collecting agent on both policies; that she can read and write; that the insured quit work with the company the last Friday in August, 1940, or as she later stated, worked until the last of May, 1940. On cross examination she again asserted that he came home the last Friday in August, 1940. Defendant's counsel objected to the testimony as to due payment of respective premiums, asserting that the premium receipt book was the best evidence. Such a book was not produced, the witness explaining that she delivered her papers to her counsel, and that at her request such counsel returned to her the premium cards, which an agent of the defendant company testified he marked as showing that said premiums were for the revival of the policy. The testimony for the plaintiff further showed that the wife never knew that assured had any shortening of breath or that he coughed and that he was working in May and June of 1940. She further admitted that the husband went to Tuskegee Hospital where she accompanied him. The proof of death furnished the company by plaintiff shows that the insured died with hypertension—heart disease. The evidence further shows that a claim for sick benefits was dated January 29, 1940, and in that claim the physician at Tuskegee showed the insured had a chronic disease, valvular heart disease, with which he was suffering at the time of the making of the claim for sick benefits.

Both affidavits from the Veterans' Hospital at Tuskegee and made by different attending physicians, diagnosed the trouble of deceased as "heart disease." The testimony for plaintiff further showed that insured never looked after his insurance,

that she attended to this for him, and made due and prompt payment.

In Bankers' Credit Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23, the policy provisions considered were like those before us. It was held that knowledge of insured's being seriously sick is the equivalent of knowledge that he is not in sound health when such life insurance contracts were procured and within the applicable terms. It is further declared that ordinary policy contracts are the measures of respective rights thereunder. Such is the effect if not thereafter modified by the parties or their authorized agents of such modifications. Protective Life Ins. Co. v. Moore, 228 Ala. 476, 153 So. 751; Morgan et al. v. Prudential Ins. Co. of America, 209 Ala. 110, 95 So. 355; Kilby Car & Foundry Co. v. Georgia Casualty Co., 209 Ala. 356, 96 So. 319; Empire Life Ins. Co. v. Landman, 213 Ala. 248, 104 So. 425.

Under the conflict in evidence, whether or not these policies lapsed was a question of fact for the jury. By its verdict, the jury found that these policies did not lapse for nonpayment of premiums. If the policies did not lapse for nonpayment of premiums, the defense offered by the appellant-defendant that the deceased was not in good health at the time they were allegedly reinstated, would be of no avail. The testimony of the appellant that these policies lapsed is found in their written records. The appellee testified that she paid these premiums regularly every two weeks, as they came due, to the authorized agents for the collection of premiums. Whether the jury believe the appellant's evidence of the written records, or the appellee's oral testimony was within the jury's province. It had the right to consider the fact that appellant did not produce its said agent, to whom the appellee testified she paid these premiums. That witness was available to the appellant as is shown by the evidence.

The revival applications offered in evidence by the appellant were signed by the mark of assured. The evidence shows without dispute that Martin Collins could write his name. The jury naturally looked to the fact that the alleged revival applications were not signed by Martin Collins, and this would authorize the jury, if it saw fit, to reject the same. The appellee testified that neither she nor Martin Collins ever revived these policies or knew anything about a revival, and no revival slips were ever attached to either of the policies. The policies provide that the revival thereof must be attached by the company to each of the policies. The fact that defendant's testimony tended to show that they were sent to the assured presented a further conflict in the testimony to be considered by the jury and by the trial court when hearing the motion for a new trial.

Appellee testified that her husband was apparently in sound health and that he worked regularly from the time the company claims these policies were revived in June of 1940 to the last Friday in August, when, she says, he lost his job with the Republic Steel Corporation and did not work any more. The expert testimony of the appellant is to the effect that Martin Collins was suffering from neuritis, hypertension and high blood pressure before the policies were revived, but whether or not he was so suffering was a jury question, under the decision in the case of Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755.

The jury by its verdict has found the facts in this case to be that no lapse occurred in the policies. This finding is based on a determination of the conflicting evidence offered by the parties. It is admitted by appellant and appellee that the premiums on these policies have been paid in full from the time they were first issued in 1934 and 1937 up to the time of the hospitalization of the insured Martin Collins.

The written charge made the basis of assignment of error number four, and refused the appellant, was covered by written given charges numbered 6, 7 and 8, and its refusal was without error.

Under the rule of Cobb v. Malone, 92 Ala. 630, 9 So. 738, we will not reverse for the refusal of the motion for a new trial.

The judgment of the circuit court is affirmed.

Affirmed.

GARDNER, C. J., and LIVINGSTON and LAWSON, JJ., concur.