This is an appeal by the beneficiary of a life insurance policy from a judgment entered for the insurance company. The beneficiary, Judy Ann Stephens Richerzhagen, sued the insurer, National Home Life Assurance Company of New York, after the insurer refused to pay on a policy insuring the life of Robert Lambert. At the close of all testimony, the trial court granted the insurer's motion for directed verdict and entered judgment accordingly.
At trial, the insurer contended that the policy was unenforceable due to misrepresentations that were made by Lambert on the application for insurance.
Code 1975, § 27-14-7, provides:
 "(a) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
"(1) Fraudulent
 "(2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
 "(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
 "(b) No plea of misrepresentation or fraud in connection with the issuance of a life insurance policy or annuity contract *Page 346 
shall be filed unless accompanied by a payment into court of all premiums paid on the policy or contract."
In response to a question on the application as to whether Lambert had ever had high blood pressure, he responded "no." It is undisputed that Lambert did in fact have a blood pressure problem and had been hospitalized and put on medication for the problem. While most of the evidence shows that the problem existed until his death, the trial court apparently felt there was some dispute as to whether he still had a problem at the time the application was completed, based on the beneficiary's testimony that she had not seen him taking any medication during that period.
The insurer called as a witness the manager of its underwriting department, who testified as to how applications were rated. In essence, she testified that the policy would not have been issued without more information, if the blood pressure problem had been revealed, and that if the latest information available showed the problem still existed it would have affected his insurability. Her testimony did not appear to answer the question whether a past blood pressure problem would have affected his insurability irrespective of whether the problem still existed.[1] Lambert's doctor testified that at the time of Lambert's hospitalization in 1976 he suffered from "hypertensive cardiovascular disease manifested by hypertension and exogenous obesity."[2] He stated that Lambert's hypertension would have materially affected life expectancy.
The beneficiary put forth no testimony to dispute the evidence that a blood pressure problem would affect life expectancy and that, without more information, a policy would not have been issued if the problem had been revealed. The contention on appeal is that Alabama law has never established that high blood pressure is, as a matter of law, material to the risk assumed and, therefore, that the question of materiality under § 27-14-7(a)(2) is one for the jury. In addition, it is contended that the question of good faith under § 27-14-7(a)(3) is one for the jury even where the evidence is undisputed, if that evidence consists solely of the testimony of the insurer's in-house underwriters.
The beneficiary is correct in asserting that Alabama courts have recognized that some diseases are so serious as to increase the risk assumed as a matter of law:
 "It is true that Alabama courts recognize that there are 'some diseases which are commonly known to be of such serious consequences that the court will declare that they increase the risk of loss, without making a jury question.' National Security Insurance Co. v. Tellis, [39 Ala. App. 455], 104 So.2d [483] at 486 [1958], quoting Sovereign Camp, W.O. W. v. Harris, 228 Ala. 417, 153 So. 870, 874
(1934). Alabama courts take judicial notice that certain conditions are commonly known to be life-threatening. See, e.g., New York Life Insurance Co. v. Zivitz, 243 Ala. 379, 10 So.2d 27, 283 (1942) (tuberculosis, cancer and Hodgkin's Disease increase risks as matters of law); New York Life Insurance Co. v. Horton, 235 Ala. 626, 180 So. 277, 281
(1938); Liberty National Life Insurance Co. v. Winfield, 37 Ala. App. 575. 72 So.2d 420, 423
(1954) (cancer). Alabama courts have been reluctant, however, to create broad categories of maladies that increase insurance risk as matters of law and thus that remove the risk of loss issue from the province of the jury. See, e.g., National Life and Accident Insurance Co. v. Collins, 244 Ala. 182, 12 So.2d 353, 354
(1943) (syphilis and cirrhosis of liver do not increase risk as matters *Page 347 
of law); Union Mutual Stock Life Insurance Co. v. Wilkerson, 367 So.2d [964] at 970 [Ala. Civ. App. 1978] (cataracts); Shinn v. Family Reserve Insurance Co., 33 Ala. App. 281, 33 So.2d 741, 742 (1947), cert. denied, 250 Ala. 194, 33 So.2d 743 (1948) (pregnancy); Life Insurance Co. v. Mann, 28 Ala. App. 425, 186 So. 583 [1938] cert. denied, 237 Ala. 253, 186 So. 586 (1939) (syphilis)."
Federal Kemper Life Assur. Co. v. First NationalBank, 712 F.2d 459, 463 (11th Cir. 1983). This Court has implicitly held that hypertension or high blood pressure is not so serious as to increase the risk as a matter of law. National Life Accident Ins. Co. v. Collins, 244 Ala. 182,12 So.2d 353 (1943). That precise question was not presented, but the Court held that based on conflicting testimony as to whether the insured was in "good health" a jury question was presented on the issue of whether the insured misrepresented that he was in good health, despite the fact that he suffered from and died as a result of "hypertension — heart disease," a problem he had not disclosed.
However, the issue whether the trial court correctly directed a verdict is not resolved solely by determining that hypertension or high blood pressure is not a disease automatically increasing the risk assumed by the insured. As previously stated, the beneficiary put on no evidence to contradict the doctor's testimony that Lambert's condition in fact would have affected his life expectancy, and there remained the underwriter's testimony that the policy would not have been issued without more information and that information of the condition would have had a negative effect on his insurance rating. Our previous holdings merely suggest that the question of "materiality" of high blood pressure to the risk assumed is ordinarily one of fact. If the facts as to materiality are undisputed, then the question need not be submitted to the jury. Stephens v. Guardian Life InsuranceCo. of America, 742 F.2d 1329 (11th Cir. 1984).
A.R.Civ.P. 50(e) states the standard for granting or denying a motion for directed verdict, and that standard has been explained as follows:
 "Rule 50(e), [A.R.Civ.P.], expressly provides that the scintilla evidence rule is the standard by which a trial judge is to determine the propriety of granting a motion for directed verdict. As a result, issues and questions in civil cases must be submitted to the jury if the evidence, or any reasonable inference therefrom, produces the merest gleam, glimmer or spark in support of the theory of the complaint. Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala. 1979); Western Ry. of Alabama v. Still, 352 So.2d 1092 (Ala. 1977)."
Quillen v. Quillen, 388 So.2d 985 (Ala. 1980). The evidence is undisputed that if Lambert had a blood pressure problem and the insurer had had knowledge of that problem, then that information would have had a negative effect on his ability to obtain insurance. The only evidence that purportedly contradicts the testimony that he did have a problem is from the beneficiary. She said that at the time she lived with him, which was until January or February of 1984, two to three months before the application was completed, she was not aware of his having a problem or of his taking blood pressure medication. Although she admitted that she would not recognize blood pressure medication, she stated that she was unaware of any prescription medicines being in the house while she lived with him.
While this testimony raises an interesting question as to whether there exists a scintilla of evidence that Lambert no longer had a blood pressure problem, we need not decide this question, because it is uncontradicted that no policy would have been issued without first obtaining more information, if the past condition had been revealed. The only issue is whether the question of the insurer's "good faith" in reaching this conclusion is always a jury question. In the absence of any testimony from any source, such as an underwriter from another insurer, that the practice of not issuing a policy under these circumstances is contrary either to that insurer's *Page 348 
practices or to industry wide practices, there is no issue on the lack of good faith to go to the jury. The judgment is affirmed.
AFFIRMED.
JONES, SHORES, ADAMS and STEAGALL, JJ., concur.
[1] A question was also presented as to whether Lambert had misrepresented his weight. He reported his weight as 240 pounds; however, most evidence suggested he weighed closer to 350 pounds. That evidence included the autopsy report, which was made less than two months after the application for insurance was completed. While the court did not rely on this alleged misrepresentation in holding for the insurer because there was some conflict in the evidence as to his actual weight, weight would have affected the rating of an applicant with a blood pressure problem.
[2] Lambert also failed to reveal that he had ever been hospitalized.