48 So.2d 180

**NATIONAL LIFE & ACCIDENT INS. CO. v. CLAYTOR.**

6 Div. 26.

Supreme Court of Alabama.
June 22, 1950.

Rehearing Denied Nov. 2, 1950.

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellant.

Andrew W. Griffin, of Birmingham, for appellee.

FOSTER, Justice.

The question on this appeal relates to the application of section 6, Title 28, Code of 1940. It is there provided that "No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

The effective date for the operation of that status was either on July 6, 1948, when the application was signed and a binder receipt given, or July 14, 1948, when the company's doctor made an examination, or August 26, 1948, when the policy of insurance was delivered. The insurance referred to is life insurance, not fire.

Part II of the application, which is the doctor's report dated July 14, 1948, in section 26 contains the following: "I hereby agree that the *proposed contract* shall not be effective until the policy has been issued and the first premium actually paid and accepted by the company and the policy has been delivered to and accepted by me in my lifetime, and while in good health, except as provided in the receipt referred to in part I, Item 34 hereof." Section 34 of part I of the application contained the following provision: "I have deposited with the company's representative $7.11 to cover all the first quarterly premium of the policy applied for, if issued, and I hold his receipt for the same made up without alteration or erasure, on the receipt form detached from and corresponding in date and number with this application. I assent to the terms of said receipt and to the declarations and agreements in part II." The receipt, which was then and there executed by one Lawson Corley, "Sup't.", dated July 6, 1948, with the same serial number as that of the application, and delivered to the applicant for insurance, who afterwards became the insured in the policy issued and dated August 26, 1948, contained the following provision material to this inquiry: "No insurance is in force on such application unless and until a policy has been issued thereon and delivered in accordance with the terms of said application, *except that when such deposit* is equal to the full first premium on the policy applied for and *such application is approved at the home office of the company* for the Class, Plan and Amount of the insurance and at the rate of the premium as so applied for, then, without affecting the issue date and anniversaries as set forth in the policy, *the amount of the insurance applied for will be in force from the date of this receipt,* but no obligation is assumed by the company unless and until such application is so approved." (Italics ours.)

The policy itself dated August 26, 1948, contained the provision: "When Policy Effective. After delivery of this policy to the insured during his lifetime and good health and payment of the first premium it becomes effective from the insurance date designated above." The insurance date designated above is August 26, 1948. The policy also contained a provision as follows: "16. Entire Contract. This policy and the application herefor, copy of which is attached to the policy and made a part of it, constitute the entire contract." Other features of that paragraph seem to be immaterial here. The application for the insurance and the doctor's report, to which we have referred, was made a part of the policy of insurance, but it does not appear that the receipt and binder, referred to above, was attached to and became a part of the policy contract, perhaps because it had then served its purpose.

The evidence showed that, without controversy, at the time of the delivery of the policy on August 26, 1948, the insured had a cancer of the lung, from which he died October 31, 1948. The evidence of the medical witnesses seem to agree that there was no indication of such affection on July 6, 1948, at the time when the application was made and receipt and binder given. On July 14, 1948, the applicant was examined by the company physician and no evidence of such trouble was found.

The trial court in construing that status instructed the jury in his oral charge that if they find from the evidence that at the time the insured paid one quarter in advance and received from the agent the receipt and binder that became the effective date to determine whether or not there was a misrepresentation or breach of warranty, since the conditions which make it so according to the terms of said binder had been accomplished, that is to say, that the deposit of $7.11 was the full first premium on the policy applied for and that the application was approved at the home office of the company for the class, plan and amount of insurance, and at the rate of the policy so applied for. The court thereby fixed July 6, 1948, as the controlling date to determine the applicability of section 6, Title 28, Code. The defendant excepted to that feature of the court's oral charge, which we have undertaken to set out in substance and effect, but not in terms. The defendant also requested the affirmative charge. However, it would be equally true that if the approval and acceptance of the application was induced by a misrepresentation or warranty of insured to the medical examiner on July 14, 1948, either with the actual intent to deceive or the matter misrepresented increased the risk of loss, then such date would also be one material to the inquiry.

The defendant, who is appellant here, assigns as error the ruling of the court in denying the affirmative charge, but did not assign as error that feature of the court's oral charge, to which exception was taken. There are only two assignments of error, one going to the refusal of the affirmative charge, and the other for the refusal of a motion for a new trial.

Section 75, Title 28, Code, provides that no life insurance company or any agent thereof "shall make any contract of insurance or agreement as to policy contract other than is plainly expressed in the policy issued thereon."

■ The legal capacity to execute a binder has been stated by this Court as affected by that statute. We have held that it does not prohibit such a contract of fire insurance issued by a general fire insurance agent who may make binding contracts of insurance whether orally or in writing. Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 65 So. 143. But we have held that a local agent of a life insurance company is not privileged to make such a contract. In order to be effective, in the light of that statute, it must be made by an agent of the company with due authority, or accepted and approved by the company. Liberty National Life Ins. Co. v. Staggs, 242 Ala. 363, 6 So.2d 432; American Life Ins. Co. v. Carlton, 236 Ala. 608, 184 So. 171; Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; Royal Neighbors of America v. Fortenberry, 214 Ala. 387, 107 So. 846; Alabama Gold Life Ins. Co. v. Mayes, 61 Ala. 163; 29 Am.Jur. 160.

■ The principle is expressed as follows in 2 A.L.R.2d 948: "Generally speaking, a general agent of the insurance company who has authority to bind the company by contract of ordinary insurance possesses also authority to issue binding receipts for temporary contracts of insurance, but a local agent is, as a rule not intrusted with power to bind the company by entering into contracts for temporary insurance before approval of the application by the home office." 44 Corpus Juris Secundum, Insurance, § 230, page 967, note 98.

In the case of Alabama Gold Life Ins. Co. v. Mayes, 61 Ala. 163, it was pointed out that under such a contract as this the company had a right to decline the acceptance of a proposal without assigning any cause, since no contract was made by an agent having authority in the first instance and, therefore, it is different from a situation where an agent has authority to make contracts of insurance and makes one subject to approval of his principal, when it was held that the principal cannot withhold his approval without sufficient cause.

In this case there is no evidence of the authority of Corley who issued the receipt and binder, but it was attached to and formed a part of the application blank and referred to in the application, as we have shown (part I, Item 34), and the application after the receipt was taken from it was sent to the home office and there accepted and approved by the issuance and delivery of the policy on August 26, 1948. Such ac-

ceptance gave validity to the binder as a temporary contract since it ratified and approved it. Since such a binder made by a soliciting agent as this does not become effective until the application is accepted and approved, the authority of the agent at the time of giving it to the appellant is not controlling on its effect after acceptance and approval.

While it does not affirmatively appear that the company had knowledge that the binder had been issued, the application itself, which was approved by the company, shows that it had been issued and made up without alteration or erasure. It is our view, therefore, that the binder should be given effect according to its terms.

The authorities have treated such a binder as a temporary insurance extending from its date until the delivery of the policy. 2 A.L.R.2d 1011, section 33; DeCesare v. Metropolitan Life Ins. Co., 278 Mass. 401, 180 N.E. 154, 81 A.L.R. 327. It is also said that "upon the acceptance of the application, the insurer becomes obligated, notwithstanding the policy is not delivered, and the receipt protected the applicant against the contingency of sickness or disability rendering him uninsurable intervening the date of the receipt and the delivery of the policy. In other words, the vitality of such a receipt is retroactively derived from the acceptance of the application." 29 Am.Jur. 160.

There seems to be some refinement developed among the cases in the application of the above principles dependent upon the exact terms of the clause and the time of the change of physical condition of the applicant occurring within the interim. See the discussion of that subject in 2 A.L.R.2d 963, section 11, pages 967, 1017. It seems to be unnecessary for us to consider that question on account of the facts of this case, Alabama Gold Life Ins. Co. v. Mayes, supra, since the only knowledge we have with respect to such change is that it occurred some time after July 6, 1948, and prior to August 24, 1948, and the policy was issued and delivered August 26, 1948, without any evidence of the date when the insurer approved the application other than the date of issuance and delivery of the

policy. We must assume therefore that such change occurred prior to the approval of the application.

It results that the provision in the policy, which we have quoted, that it becomes effective after its delivery to the insured during his lifetime and in good health, must be considered in connection with the temporary binder as soon as the company accepted and approved the application. It was without power under the terms of the binder, after it was approved and accepted, to refuse to deliver the policy to the insured, although he may then be in a state of health which rendered him uninsurable, if at the time when the application was taken and the medical examination made, he was in a state of health then insurable under the contract and made no material false representations or warranties with actual intent to deceive or as to a matter which increased the risk of loss.

We say this although there is no assignment of error by appellant challenging that feature of the court's oral charge, but the question is raised by the refusal of the court to give the affirmative charge for appellant. Appellant's counsel in brief, as we understand it, does not argue that because insured did become uninsurable in the interim, and was definitely found to be so on August 24, 1948, two days before the delivery of the policy on August 26, 1948, the policy was not on that account effective. But the argument proceeds upon the theory that there was a failure to disclose certain information which should have been given in the application and to the medical examiner in answer to the questions propounded to the insured, and that by reason of such failure there was a breach of warranty or false representation sufficient to avoid the policy under section 6, Title 28 of the Code.

We do not think it is necessary to set out even the substance of the evidence in connection with the answers of insured in the application and medical report to support our view that appellant has no cause to complain that the court left it to the jury, properly instructed, to determine whether insured made a misrepresentation or warranty as to a matter material to risk with the actual intent to deceive, or as to

418

a matter which increased the risk of loss although without such actual intent to deceive. It is without question that insured had no information that he had a cancer at any time before the policy was issued, or that he had any other condition which increased the risk of loss. If he did not answer some of the questions as fully as he should have done, as to which the evidence is in conflict, it was a question properly left to the jury to decide whether such failure was with the actual intent to deceive or that it would have disclosed a condition which increased the risk of loss.

The court carefully instructed the jury as to those matters and properly denied the affirmative charge requested by appellant.

We are also of the opinion that the verdict of the jury was not contrary to the law as given them in the charge by the court or to the great weight of the evidence. Those are the only assignments of error and, therefore, the judgment must be affirmed.

Affirmed.

BROWN, LAWSON and STAKELY, JJ., concur.