50 So.2d 727

### LIFE & CASUALTY INS. CO. OF TENNESSEE v. LATHAM.

### 6 Div. 132.

Supreme Court of Alabama.
Feb. 15, 1951.

Patton & Robison, of Carrollton, and Jones, Dominick & McEachin, of Tuscaloosa, for appellant.

162

W. A. Davis, of Aliceville, for appellee.

FOSTER, Justice.

This is a suit on an alleged accident and life insurance policy by the beneficiary named in it. The only question before us is whether there was in effect at the time of insured's death such a policy, that is to say, whether the policy contracted for had taken effect as alleged in the complaint. The complaint was in one count, in Code form No. 12, giving the date of the policy as February 14, 1946. The insured was accidentally killed February 22, 1946. On that day the local agent received a policy from the general office duly executed. It had not been delivered by the agent at the time of the death of insured. The inference from the evidence most favorable to plaintiff was that the local agent may have received the policy before the death of insured. That was a disputed issue of fact.

The evidence was without dispute that, on February 14, 1946, insured paid forty cents, the first weekly premium, and received a receipt from Mr. Fountain, the local agent, reciting that it was held in suspense until his application is acted on by the company at its home office; that there was to be no liability on the part of the company unless the applicant is accepted and the policy delivered while the applicant is in good health, and the money credited to the premium receipt book. A policy was in possession of the agent after he found out about the death of insured and he then returned it to the general office. It was in evidence. It recited the date of issue, February 25, 1946. It contained a clause that "this policy shall not take effect prior to the date of issue of same, nor unless the first premium shall have been paid in cash and the contract delivered and accepted during the lifetime and sound health of the insured."

Grant Latham testified for plaintiff that he was about one hundred and fifty yards away when insured was killed and saw the accident. That was about five or five thirty in the afternoon. That in about an hour and a half he went to Mr. Fountain and got him and a policy and carried them to Mr. Latham (father of insured). Mr. Fountain had the policy. He did not show it to the witness. He showed it to Mr. Latham, but he kept it in his hands. He was asked, "did Mr. Fountain tell you he had a policy on the life of Leonard Latham to be delivered to him?" Objection and exception were duly made. He answered, "Yes, sir." There were present Mr. and Mrs. Latham (father and mother of insured), also William Hays Latham and Hank Tilley. He opened the policy and showed it to them. Mr. Latham and William Hays inspected it. "Don't think Mrs. Latham saw it. The night train comes in about seven o'clock. The post office was supposed to be closed for a legal holiday. The policy in evidence looks like the policy he had and could be the same. Mr. Fountain said he reported

the death to the company and they told him to send the policy back."

The next witness was J. G. Hood, sheriff of the county. He was at that time canvassing for re-election. He had a conversation with Mr. Fountain that afternoon and "he had some papers in his hand and he said that was his (Leonard Latham's) policy and it was bad he got killed, but just for forty cents his people would get $1,000.00." There were objection and exception duly made. That was late in the afternoon of the day Leonard was killed. He said it was a policy. He didn't unfold it and show it to the witness. Objection and exception were duly taken. The witness and Mr. Fountain were not transacting any business for the company.

The next witness for plaintiff was William Hays Latham who was a brother of deceased. He went "up there that night after the accident" and Mr. Fountain was there. He had a policy with him and witness read it. It was similar to the one in evidence, and was dated February 20, 1946. It had Leonard's name on it. "Mr. Fountain said he called somebody who told him to send the policy back and not to let us have it." There were objection and exception duly made. "He said he looked for Leonard Latham and he had gone to Tuscaloosa and he could not deliver it." That occurred, he said, that morning. Exception and objection were duly made. That conversation was heard by his father, but not his mother. That policy was just like this one which is dated February 25, 1946. He said he was going to mail it back to the company. He was in Aliceville, twenty-two miles away when he heard of the accident, and was at the scene in about thirty minutes.

Defendant's evidence also tended to show that Mr. Fountain received the policy in the mail that afternoon after the death of insured. Its date of issue was as it appears, February, 25, 1946, which was Monday. He states that all their policies are dated on Monday, and he receives them on Friday or Saturday before the Monday, the date of issue. Mr. Fountain had no authority to make contracts of insurance. He took applications and received premiums on applications, and later delivered the policies if they were issued and sent to him for delivery while the insured was still in sound health. The insured was killed about five or five thirty in the afternoon, and Mr. Fountain says he received the policy in the mail about six thirty or six forty-five. There is no evidence of an effort to prove a contract of insurance binding as of February 14, 1946, as alleged in the complaint.

We call attention to the fact that the receipt in no respect had the features of a binder such as was considered in the case of National Life & Accident Ins. Co. v. Claytor, 254 Ala. 413, 48 So.2d 180.

In the court's oral charge he said to the jury that if after the acceptance of an application and payment of the premium, the policy is written, signed and put into the hands of an agent of the company or the company properly mails it to the insured, that constitutes a delivery which makes it binding as of that date "provided the policy does not contain a provision to the contrary." He further charged the jury that, if a policy was issued whose effective date was after the death of insured or not delivered according to his previous instructions, the verdict should be for defendant. And that if they believe that the policy was never delivered, or the effective date was after the death of insured, they should find for defendant.

Objection was made to the evidence that the policy bore date of February 20, 1946, because it was secondary evidence of the contents of a writing without giving defendant notice to produce it. The evidence for defendant, given later in the trial, that the policy introduced in evidence by defendant, with February 25, 1946 as the date of issue, was the only policy of such sort ever issued or executed or put in the possession of Mr. Fountain, with Leonard Latham as insured, cured any error that may have occurred in allowing plaintiff to prove that Mr. Fountain did have such a policy dated February 20, 1946, although no notice to produce was given. On the

basis of such evidence, notice to produce would have been an empty procedure, the same as proof that it was lost. Dabbs v. Letson, 210 Ala. 306, 98 So. 4.

The objection to certain statements made by Mr. Fountain are affected by principles which we will now refer to.

■ The general rule is that a statement made by an agent, not in connection with the occurrence of the transaction to which he was referring and not in the scope of his authority, is not admissible as evidence against the principal, except for the purpose of impeaching the witness. Couch v. Hutcherson, 243 Ala. 47, 8 So.2d 580, 141 A.L.R. 697; Atlanta Life Ins. Co. v. Bolden, 239 Ala. 231, 194 So. 653; Union Naval Stores Co. v. Pugh, 156 Ala. 369, 47 So. 48.

■ Another principle is that "Whenever evidence of an act is in itself competent and admissible as a material fact in the case, and is so admitted, the declarations accompanying and characterizing such act become and form a part of the res gestae of the act, and, as such, are competent and admissible in evidence, as being explanatory of the act." Campbell v. State, 133 Ala. 81, 31 So. 802, 804. But there is a limitation on that principle, which is, "this does not apply to admissions as to past transactions." Mobile Light & R. Co. v. Baker, 158 Ala. 491, 48 So. 119; Tennessee River Transp. Co. v. Kavanaugh, 93 Ala. 324, 9 So. 395.

■ The evidence of William Hays Latham that Mr. Fountain had in his possession on February 22, 1946, after the death of insured, a policy dated February 20, 1946, in other respects like the one in evidence dated February 25, 1946, was admissible; but not that he looked for Leonard that morning to deliver the policy or that he had gone to Tuscaloosa and could not deliver it. That related to a past transaction and was not a part of the res gestae of the occurrence that day after the accident when he had possession of a policy and showed it to the witness.

■ It is evident that the material inquiry was twofold. Did the policy he had bear date of February 20th or February 25, 1946? Did Mr. Fountain have possession of it for delivery before insured died? It could not be effective under its terms unless delivered after its date and before insured died. If Mr. Fountain had in his possession for delivery a policy with February 20, 1946 as its date of issue, and that possession was before insured died on February 22, 1946, at five or five thirty in the afternoon, that would sustain the complaint, except that the complaint alleges that it was February 14, 1946. The evidence supporting those theories is so meager, it is barely a scintilla. Now if that policy had February 20, 1946, as the date of issue, then there would appear nothing to prevent the policy from taking effect before Leonard died that afternoon, if Mr. Fountain had possession of it for delivery before he died.

■ The rule in such event would apply that, in the absence of a special contract, a policy is considered delivered when it is delivered by insurer to its agent for delivery to the insured. New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663; American Nat. Life Ins. Co. v. Few, 224 Ala. 576, 141 So. 234.

■ A provision in a life insurance policy that no obligation is assumed unless insured is alive and in sound health on the date of its delivery is reasonable and valid. National Life & Accident Ins. Co. v. Collins, 244 Ala. 182, 12 So.2d 353; Metropolitan Life Ins. Co. v. James, 225 Ala. 561, 144 So. 33; Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; National Life & Accident Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886.

But the evidence of Grant Latham that Mr. Fountain later that evening, after the accident, had a policy and told the witness he had a policy on the life of Leonard to be delivered, was admissible as a part of the res gestae of his possession then and there of the policy. But it is of little probative value on the disputed issues.

■ The evidence of Mr. Hood, the sheriff, that late that afternoon Mr. Foun-

tain had some papers and said it was "his (Leonard's) policy and it was bad he got killed, but just for forty cents his people would get $1,000.00," was illegal to the extent of that last clause. That was not a declaration characterizing the policy he then had in his possession, or explaining his possession of it in any respect. The objection should have been sustained.

The complaint declared upon a policy whereby defendant insured the life of Leonard Latham on the 14th day of February, 1946. It was not laid under a videlicet. It should therefore be proven as alleged. Independent Life Ins. Co. v. Vann, 24 Ala.App. 93, 130 So. 520; Alexander v. Woodmen of the World, 161 Ala. 561, 49 So. 883; 16 Alabama Digest, Pleading, ☜391, page 200.

Numerous refused charges are assigned as error. Several of them assert correct principles of law which apply in this case, but the same principle was covered by the court's oral charge. We will not examine them all critically, since the judgment must be reversed and the trial court seems to be familiar with the applicable principles. We also think that the great weight of the evidence was against the verdict of the jury, and that the motion for a new trial should have been granted on that ground.

The judgment is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, LAWSON and STAKELY, JJ., concur.