182 So.2d 375

**OCCIDENTAL FIRE AND CASUALTY COMPANY**

**v.**

**W. B. EIDSON et al.**

**6 Div. 239.**

Supreme Court of Alabama.

Jan. 6, 1966.

Rehearing Denied Feb. 10, 1966.

Euel A. Screws, Jr. and Gallion & Hare, Montgomery, and Beddow, Embry & Beddow, Hare, Wynn, Newell & Newton, Birmingham, for other appellees.

Spain, Gillon & Young, Ralph B. Tate and Ollie L. Blan, Jr., Birmingham, for appellant.

Huie, Fernambucq & Stewart, Birmingham, for appellee Eidson.

MERRILL, Justice.

Appellant brought a declaratory judgment action against appellee, Eidson Produce Company, to determine if it was required to defend suits brought against Eidson because of a collision an Eidson truck was involved in near Prattville on January 2, 1964. Appellees other than Eidson are plaintiffs who have filed suit against Eidson for personal injuries or wrongful death.

Appellant's contention was that although it had issued liability insurance coverage on the Eidson truck involved in the accident, that coverage extended to a radius of only fifty miles from Birmingham by virtue of an endorsement to the policy, and since it is agreed that the accident occurred more than fifty miles from Birmingham, there was no coverage under the policy and no liability .to appellant. Appellee Eidson denied that the Restrictive Territory and Radius Endorsement was attached to the policy. Appellant then amended its bill and asked for reformation of the policy to include the endorsement. By stipulation, it was agreed that the endorsement should have been attached to the original policy and that the policy was reformed to include that endorsement

The trial court stated that the pivotal issues in the case were (1) whether or not the assured, Eidson, in its dealings with the. complainant insurance company, com-plied with the endorsement in seeking to effect substitution of a "short haul" vehicle for a "long haul" vehicle as specified in the policy schedule; and (2) whether the insurance company was estopped by the dealings between itself and Eidson, and attendant circumstances surrounding the dealings between them to deny the alleged substitution was effected in such manner as to permit a status of coverage.

Among certain findings of fact, the trial court found that Robert L. Lacey, Jr. was a general agent for the appellant insurance company, that the insurance company and Lacey customarily handled their dealings with one another on a monthly accounting basis, and that due, proper and effective notice was given by telephone by the assured Eidson to Lacey, in the manner established between them in the usual course of business, of the substitution of a "short haul" vehicle for another vehicle covered by said policy as a "long haul" vehicle.

The trial court decreed that coverage was afforded by the policy on the vehicle in question, appellant was ordered to defend the suits on behalf of Eidson, and to pay and assume liability for the damages that might be awarded by any court in the suits.

The insurance policy provided coverage for some 34 automobiles and trucks. The vehicles numbered 23 through 32 were subject to the endorsement and were covered only while operating within a fifty mile radius of Eidson's principal place of business in Birmingham. These vehicles were referred to as "short haul" vehicles and those not subject to the endorsement were called "long haul" vehicles. The vehicle involved in the accident was listed as No. 27 and was a short haul vehicle.

The endorsement also provided that coverage for occasional trips beyond policy limitations could be obtained "by the insured's mailing written notice of such trips to the Company in advance of each such trip, the postmark on the envelope indicating it was mailed in advance of the trip.",

and the premium was $3.00 per trip, payable in advance with notice of such trip.

It is undisputed that the accident happened outside the fifty mile radius and that the insured did not give written notice and pay the premium in advance as required by the endorsement.

■ Counsel for appellant capably and completely cover the issues in two argued assignments of error. We first consider the argument that the court erred in holding Lacey to be a general agent of the company. It is obvious that if he were only a soliciting agent for insurance, and nothing more, that he would have no authority to waive the procedures required by the policy and the endorsement.

Lacey operated and principally owned a one-man insurance agency in Birmingham, known as Underwriters Agency, Inc. His truck insurance business consisted primarily of short haul policies. He shared office space with Earl Richards, another insurance agent, who specialized in long haul business, but their businesses were separate.

The appellant, Occidental Fire and Casualty Company, was formed in 1961, with its principal place of business in Denver, Colorado. In 1963, an agent of appellant contacted Richards and Lacey about representing their company. Both went to Denver to negotiate and one of the policies Lacey took with him to show appellant was the Eidson Produce policy. Since Richards was in the long haul business, the formal agency contract was made with him, but appellant sent an agency application and a check for the license fee for both Richards and Lacey to the Alabama Department of Insurance. The license for Lacey was sent to him by appellant and it conferred on him the status of a "permanent, resident, agent" for "casualty" business with the powers to write "auto liability, auto physical damage, and general casualty" insurance.

Lacey wrote appellant about taking on the Eidson's insurance which Lacey had handled for some sixteen years. After several conferences between Lacey and representatives of appellant as to the charges, an agreement was reached. Finally, in a telephone conversation with Lacey and his assistant, Mrs. Evelyn Ohme, Lacey was told by appellant's representative, Watson, to issue the policies to Eidson, and Watson told Mrs. Ohme to get three of their policies from Richards and prepare them. The policies were signed by Lacey. Lacey had no discussion with Richards about the policies prior to issuing them, and Richards knew nothing about them until after Lacey had issued them. All premiums were paid by Eidson to Lacey upon monthly or regular billing; Lacey obtained the full commission, Richards received no part of it; Eidson had no direct dealings with appellant and the initial $11,000 premium was charged to Lacey's account and appellant accepted the policies signed by Lacey and the initial premium. Lacey wrote, issued and accepted risks on behalf of appellant for other policies, received notice of losses and obtained company adjusters to handle these losses. Also, on February 14, 1964, appellant wrote Lacey canceling the Eidson policies and stated in the letter: "As you know, we are faced this time with a rather severe loss, which occurred on January 2, 1964."

In Tutton v. Liverpool & London & Globe Ins. Co., 237 Ala. 230, 186 So. 551, we said:

"We have heretofore uniformly held that an agent who is authorized 'to solicit and receive applications for fire insurance, and, at his discretion, to countersign and issue policies of insurance intrusted to him by the company for that purpose, must be regarded quoad hoc as the general agent of the company.' Yorkshire Ins. Co., Limited, v. Gazis, 219 Ala. 96, 121 So. 84, 85; Continental Fire Ins. Co. v. Brooks, 131 Ala. 614, 30 So. 876; Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 65 So. 143.

"Likewise it is established by numerous decisions of this court that an agent

clothed with authority to write policies of fire insurance is a general agent, in so far as to bind the insurer by his waiver of conditions and warranties inserted in the policy for the benefit of the insurer. [Citing cases]."

This is followed in Bankers & Shippers Ins. Co. of New York v. Blackwell, 260 Ala. 463, 71 So.2d 267.

We have not set out all the evidence on the point but we are fully persuaded that the dealings which took place between appellant and Lacey, both before and after the accident on January 2, 1964, were sufficient to support the finding of the trial court that Lacey was a general agent of appellant.

We come now to the assignment of error which charges that the court erred in decreeing that coverage was afforded on this vehicle in question when it was involved in the accident near Prattville on January 2, 1964.

Unless there was a waiver of the conditions in the policy, there could be no liability on appellant because the accident happened to a "short haul" vehicle when it was outside the radius of fifty miles, and the insured did not give the written notice and pay the premium in advance as required by the endorsement.

On the morning of January 2, 1964, a Mrs. Ryder, an office employee of Eidson, called Mrs. Ohme at Lacey's office about 9:30 A.M. and told her that an Eidson "long haul" truck was damaged in Mississippi; that they had sent their last "long haul" truck to Mississippi; that they had a load of lettuce that had to be taken to Montgomery and that they were going to have to use a "short haul" truck for the Montgomery trip. Mrs. Ryder told Mrs. Ohme which truck it was and Mrs. Ohme said "O.K." It had been their custom to deal by telephone with someone at Eidson's calling Mrs. Ohme. Lacey had never required written notice for substitution of vehicles or for variations in use and this had ex-

tended over the period of some fifteen years that Lacey had handled Eidson's truck insurance.

After Lacey countersigned appellant's policies to Eidson, he personally delivered them and explained the difference between the new policies and the previous policies. Lacey testified: "I told him we had a different radius endorsement on that and the way he customarily had the right to send a truck out on an occasional trip that would go over fifty miles, that in this particular case that that didn't exist and he would have to notify us to that effect if he did. That is the only difference." It is evident that Eidson notified Lacey the way they had always done.

Mrs. Ohme was Lacey's sole assistant. She practically ran the agency, while Lacey sold insurance. Mrs. Ohme was a licensed insurance agent with the State of Alabama, she kept books, handled all claims, physically prepared all policies, made endorsements and handled and reported claims.

Mrs. Ohme testified that she prepared a memorandum notice to send to Occidental "within the hour" after being notified by Mrs. Ryder of the use of the short haul truck to go to Montgomery. She signed Lacey's name to it and had it ready for the eleven o'clock mail. She had not asked for the payment of the premium in advance or sent it with the memorandum because "we never did that." Mrs. Ohme was positive about this, but the envelope containing this memorandum was postmarked January 6, 1964, 7:00 P.M.

The "short haul" truck left Birmingham near noon and was involved in the accident about 2:30 P.M. near Prattville.

Appellant argues that our cases hold, and they do, that coverage under an insurance policy cannot be created or be enlarged by waiver or estoppel and relies on our recent cases of Mooradian v. Canal Ins. Co., 272 Ala. 373, 130 So.2d 915, and Inland Mutual Ins. Co. v. Hightower, 274

Ala. 52, 145 So.2d 422. Each of these cases contains this statement:

"The unvarying rule is that coverage under an insurance policy cannot be enlarged by waiver or estoppel, since such doctrine can only have a field of operation when the subject matter is within the terms of the contract. * *"

In the *Mooradian* case, the policy specifically excluded liability for injuries to a passenger. We said that to hold the insurer liable for injuries to a passenger in the vehicle would be "to make a new contract so as to cover bodily injury or death resulting to a passenger in the insured vehicle, when by its terms, it is expressly excluded from the contract." We held that the passenger hazard was not within the subject matter of the contract.

In the *Hightower* case, supra, the policy did not apply while any uninsured trailer was being towed by the insured tractor. Such a trailer was not within the subject matter of the contract.

But here, the "short haul" vehicle No. 27 was within the subject matter of the contract and could be converted into a "long haul" vehicle by the insured alone if written notice was mailed in advance of the trip along with the additional premium. We conclude that since the vehicle was within the subject matter of the contract, the next question presented was whether the other pertinent provisions were waived by appellant. Piedmont Fire Ins. Co. v. Fidelity Mortg. Co. of Alabama, 250 Ala. 609, 35 So.2d 352.

In British General Insurance Co. v. Simpson Sales Co., 265 Ala. 683, 93 So.2d 763, where the agent, who had no actual authority to do so, told the insured that the property would be insured even if moved outside the State of Alabama, we said:

"Thus there are two tests which may be applied. If either is found to exist, then the plaintiff is entitled to recover. The first is whether it was the usual course of business of such an agency to make such stipulation. The second is whether the circumstances justified an inference by plaintiff as a member of the public that it would be appropriate for a general agent to make such a stipulation. As bearing on the second test, we quote the following from Syndicate Insurance Co. v. Catchings, 104 Ala. 176, 188, 16 So. 46, 50:

'* * * Would not this duty appear to the general public to lie naturally within the legitimate and proper scope of the powers of these agents? Who, except some one learned in the law, or trained in insurance business and technicalities, would have acted differently from the plaintiff, in trusting these agents and relying on what they told her as to making proof of her loss? * * *'"

It seems clear that the facts here meet the tests. Appellee and Lacey followed the same course of business that they had used for over fifteen years in the handling of many claims, and the agent, Lacey, had personally delivered the new policies and explained the difference to Eidson. And then the insured followed the instructions given to it when a "short haul" vehicle was used on a long haul.

In addition, in this particular case, appellee did not have the endorsement with its conditions before it. The agent "explained" the limitations and gave instructions and appellee followed those instructions. Certain it is that appellee, as a "member of the public," had a right to accept and follow the agent's explanation and directions.

Appellant contends that even if Lacey were held to be a general agent and he could waive, still no written notice was given and no advance premium was paid and there could be no liability.

Before using vehicle No. 27 for the "long haul", Eidson gave notice to Lacey in the only manner it is shown that notice had ever been communicated between these

two, by telephone. It is not possible for Eidson to have known, from the record, that any other way was to be followed. This for the reason that the endorsement was not attached to the policy or delivered to Eidson. The "O.K." that was given by Mrs. Ohme was, under the circumstances, sufficient to meet the notice requirement specified in the endorsement and to provide coverage to the assured.

The only other provision not complied with, as set forth in the endorsement and relied upon by the appellant, is the failure of the appellee to forward the required premium when it gave notice of the substitution. Provisions regarding the payment of premiums have been held by this court to be the subject of waiver in a long line of the decisions.

■ An insurer's agent, authorized to collect premiums, has implied authority to extend payment. First National Life Ins. Co. of America v. Gross, 25 Ala.App. 51, 140 So. 628. The authority need not be shown by direct evidence, but may be inferred from the course of dealings pursued. United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 So. 646. Previous dealings of the insured with the insurer's agent are admissible to show waiver of payment of the premiums by the agent. Commercial Fire Ins. Co. v. Morris & Co., 105 Ala. 498, 18 So. 34.

The record has in it testimony to the effect that Eidson dealt with Lacey on a monthly accounting basis in the payment of premiums. This fact, when coupled with the fact that Mrs. Ohme did not advise Eidson that a premium would have to be paid before effectuating the substitution of vehicle No. 27, would be sufficient to show a waiver of the advance premium set forth in the unattached endorsement.

Appellant argues that Mrs. Ohme was only a clerk-stenographer employed by Lacey and had no authority to give the "O.K." for the substitution of one truck for another. We have already listed facts which show that Mrs. Ohme was more than a mere clerk or stenographer. She was necessary and practically indispensable to the proper operation of the agency and she fits adequately into the description of a subagent in the case of Schloss Brothers & Co. v. Gibson Dry Goods Co., 6 Ala.App. 155, 60 So. 436, "* * * where the employment and creation of agency is of such a nature as to carry with it the necessary implication that a subagent is to be employed in connection with the agency created, the principal is bound by the acts of such subagent while acting within the line of employment or scope or authority of agency, and is charged with notice or knowledge acquired by him while so acting. The authority of the agent is always construed to include all the necessary and usual means of executing it properly, and it follows by necessary implication that, when one employs an agent under circumstances showing the necessity of the appointment of a subagent to carry into effect the transaction for which the agent was employed, the subagent would also be an agent of the principal. * * *"

The undisputed testimony of Mrs. Ohme was that she gave written notice to the company and put it in the mail in advance of the beginning of the trip. True, the endorsement required the insured to give the notice, but we have held that written notices required by an insurance policy of an insured can be furnished by agents of the company. Alabama Farm Bureau Mutual Cas. Ins. Co. v. Teague, 269 Ala. 53, 110 So.2d 290.

We cannot agree that the telephone notice to Mrs. Ohme, her writing of the notice to appellant and her "O.K." of the substitution was not the act of an agent of appellant.

■ Finally, appellant contends that custom and usage cannot be looked to to prove or establish a contract. This, we concede, and the principle is probably best stated in City Mortgage & Discount Co. v. Palatine Ins. Co., 226 Ala. 179, 145 So. 490:

"Whatever may be the rule in some other states, it is settled in Alabama that custom or usage cannot be looked to to prove or establish a contract. The customs, usages, and course of dealings in a business may sometimes be looked to in a similar business to explain or aid in the interpretation or construction of a contract; but never to prove that a contract has been entered into. * * *"

We think we have demonstrated that custom and usage did not create a contract here, but the conditions in the endorsement were conditions of forfeiture which were waived or were subject to estoppel by the acts of the insurer's agent, and longstanding custom and usage between parties is relevant to show a waiver of conditions of forfeiture in a contract.

We are convinced that there was evidence or tendencies from the evidence to support the findings of the trial court who saw and heard the witnesses.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.