308 So.2d 695

**HARTFORD ACCIDENT AND INDEMNITY CO., a corp.**

v.

**Marshall OGLESBY et al.**

**SC 758.**

Supreme Court of Alabama.

Feb. 20, 1975.

William L. Utsey, Butler, and Howell, Johnston, Langford, Finkbohner & Lawler, Mobile, for appellant.

W. H. Lindsey, III, Butler, for appellees, Marshall Oglesby, Anthony Oglesby and Superior Drilling & Well Servicing Co., Inc.

Inge, Twitty, Duffy & Prince, Mann-Kline, Inc., Mobile, for appellee.

**624**

JONES, Justice.

Marshall Oglesby, Anthony Oglesby, and Superior Drilling & Well Servicing Co. (appellees) filed this action in the nature of a declaratory judgment against Hartford Accident and Indemnity Co. (appellants) to determine whether a corporate insurance policy issued by Hartford provided coverage on a certain Ford Cobra automobile, or in the alternative to compel specific performance to provide such coverage under an alleged agreement to insure. The Circuit Court of Choctaw County, Alabama, decreed that the subject car was insured to the extent of the full fleet coverage. Hartford appeals assigning as error the insufficiency of legal evidence to support the order. We affirm.

On January 5, 1968, a comprehensive (fleet coverage) automobile liability policy was issued by Hartford through its agent, Mann-Kline (appellee), which covered the automobiles used both by Oglesby's family and his business, Superior Drilling & Well Servicing Company. In December of 1968, Oglesby purchased a high performance Ford Cobra automobile for his seventeen year old son, Anthony, and it too was covered under this corporate policy until January 5, 1969, when the first year of the policy expired.

At that time, Hartford informed Oglesby that the Cobra would be excluded from its coverage due to the age of the driver and the high-powered nature of the automobile. Consequently, a separate policy for this car ($10,000–$20,000 liability coverage) was issued by Hartford, and additional coverage of $240,000 on the automobile was purchased through Mann-Kline from Continental Casualty Company, both of which were effective from January 5, 1969, to January 5, 1970.

In September of 1969, Anthony went off to school and Oglesby informed Walter Roney of Mann-Kline that he himself would now be the principal operator of the Cobra. On direct examination Roney testi-fied, "Mr. Oglesby said, 'By-the-way, Tony has gone to high school and will not be driving it [the Cobra].' And I believe I kiddingly said, 'This is another service we can perform because we can save you some money and put it all back into the fleet,' because at that time Mr. Oglesby was paying a surcharge in rate for the underage driver. 'We can probably put it back in the fleet.' "

On cross examination, the following appears:

"Q I believe you testified earlier that Marshall Oglesby did not request you to add this Cobra automobile to the corporate policy at that time, did he?

"A He did not specifically request it, that is correct.

"Q I also understand your testimony to the effect that you told him you probably could put it back on the corporate policy?

"A That's correct.

"Q You did not commit to do that to him, did you?

"A I would have to say no."

Oglesby testified:

"Q Did Mr. Roney at the time you talked with him tell you that he would put that Cobra under the fleet policy?

"A Yes, sir."

The Cobra was involved in the accident which gives rise to this dispute on January 7, 1970; but no more mention is made of the $10,000 policy or the $240,000 policy as to whether they lapsed or were renewed. Notice of the accident was made to Hartford by Mann-Kline under the corporate policy on January 9, 1970, and the renewal issuance date of the corporate policy was February 23, 1970.

Three issues confront us:

(1) Did Mann-Kline, as the agent of Hartford, have the requisite authority to bind Hartford to provide coverage for the Cobra under the corporate policy ($250,000 per person)?

(2) Was there sufficient legal evidence to support the finding of the trial Court that a binding insurance contract existed between Hartford and Oglesby? and

(3) Did the trial Court err in overruling Hartford's demurrer to the bill of complaint?

### I.

As to the "agency" issue, we must first consider the scope of Mann-Kline's agency arrangement with Hartford. The agency agreement between Hartford and Mann-Kline expressly provided Mann-Kline with authority "with respect to all classes of business . . . which the company is legally qualified to write in said territory, to:

"(a) Solicit, submit applications, receive and accept proposals, issue and deliver policies, bonds, certificates, endorsements and binders which *the Company may, from time to* time, authorize to be issued and delivered;

"(b) Cancel such policies, bonds, certificates, endorsements and binders at the discretion of the Agent where such cancellation is legally possible; . . ."

Mann-Kline and Oglesby argue that this agreement made Mann-Kline a general agent of Hartford, and thus clothed it with the actual authority to bind Hartford to provide coverage on the Cobra. Hartford, on the other hand, contends that Mann-Kline's authority to bind Hartford on this corporate policy was limited since it had made known to Mann-Kline that Oglesby's account had to be cleared through Hartford's Atlanta office. Therefore, says Hartford, the only theory of liability must be based upon apparent authority which it asserts the agent did not have in this case.

The evidence before us is fully supportive of the trial Court's finding that Mann-Kline was a general agent of Hartford, and, accordingly, had actual authority to bind Hartford on insurance contracts. This Court has generally held that an agent who is authorized "to solicit and receive applications for insurance, and, at his discretion, to countersign and issue policies of insurance entrusted to him by the company for that purpose, must be regarded quoad hoc as the general agent of the company." Sun Insurance Office of London v. Mitchell, 186 Ala. 420, 65 So. 143 (1914). See also Occidental Fire and Casualty Company v. Eidson, 279 Ala. 111, 182 So.2d 375 (1966); Tutton v. Liverpool and London and Globe Insurance Co., Ltd., 237 Ala. 230, 186 So. 551 (1939); Yorkshire Insurance Co., Ltd. v. Gazis, 219 Ala. 96, 121 So. 84 (1929).

We do not find any limiting features in the agency agreement between Hartford and Mann-Kline, and so cannot agree with Hartford's contentions on this point. If we assume, arguendo, that Mann-Kline's agency agreement was found to be limited in some way, this fact alone would not alter our conclusions.

An agent who is, by certain limitations, less than a general agent may bind his principal as though he were a general agent by apparent authority. While an agent's powers can be limited, and such limitations be binding as between the company and the agent, this could not affect third persons relying upon his apparent authority without notice of his limitations. Continental Casualty Co. v. Holmes, 266 F.2d 269 (5th Cir. 1959); Sun Insurance Office of London v. Mitchell, supra.

Having determined the scope of Mann-Kline's agency arrangement with Hartford, we next consider whether Mann-Kline had

the requisite authority to bind Hartford by oral binder in regard to coverage under Oglesby's corporate policy. Hartford relies heavily upon Tit. 28, § 75, Code of Alabama 1940 (Recomp.1958), which states:

"No . . . insurance company nor any agent thereof shall make any contract of insurance or agreement as to policy contract other than is plainly expressed in the policy issued thereon . . . ."

It also relies upon Alabama Farm Bureau Mutual Casualty Insurance Company v. Adams, 289 Ala. 304, 267 So.2d 151 (1972), in contending that Mann-Kline could not make a contract of insurance or any agreement as to a policy contract other than that which is plainly expressed in the actual printed policy issued thereon. Mann-Kline and Oglesby, however, rely on the premise that this statute does not prevent the negotiation of an enforceable parole contract to insure.

█ In view of the express agency agreement between Hartford and Mann-Kline and the history of the coverage afforded Oglesby by Mann-Kline, we find ample evidence to support the trial Court's holding that Mann-Kline had the requisite authority to make a preliminary oral contract of insurance with Oglesby which would be binding upon Hartford. Under Alabama law, a general agent duly authorized to bind his company by contracts of insurance may make valid contracts by parole. National Life and Accident Insurance Co. v. Claytor, 254 Ala. 413, 48 So.2d 180 (1950). Furthermore, this Court has held that Tit. 28, § 75, does not prohibit such an oral contract of insurance. National Life and Accident Insurance Co. v. Claytor, supra; Hartford Fire Insurance Co. v. Shapiro, 270 Ala. 149, 117 So.2d 348 (1960).

As approved in Sun Insurance Office of London v. Mitchell, supra:

"A contract of insurance is an agreement, express or implied, and that means

either an express contract, an express agreement by words and in this connection it would not make any difference whether it was in writing or not."

Here, especially since the written renewal policy had not been issued, it was perfectly natural for Mann-Kline and Oglesby to enter into an oral binder. 32 C.J., Insurance, § 184, citing Hartford Fire Insurance Co. v. King, 106 Ala. 519, 17 So. 707, states:

"A preliminary contract of insurance is necessarily of the most informal character for it would be impractical for a company to carry on its business at a distance if such preliminary arrangements required for their validity and efficacy the formalities required for the executed contract."

As to Hartford's reliance upon the *Alabama Farm Bureau* case, it is clearly distinguishable from the situation at hand. In that case, there was no special agreement modifying the exclusionary clause, nor any request by the insured to have such a clause modified. In the instant case, Oglesby had requested a change in the coverage of the Cobra, the question being whether the parties had agreed to bind the coverage to take effect upon renewal of the policy.

## II.

█ As to the sufficiency of legal evidence issue, we are bound by the general rule of appellate review: Where the evidence is taken ore tenus, there is a presumption of correctness in favor of the findings of the trial court which will not be disturbed on appeal, if supported by competent evidence, unless clearly and palpably wrong. Sims v. Reinert, 285 Ala. 658, 235 So.2d 802 (1970); Robinson v. Robinson, 285 Ala. 168, 229 So.2d 919 (1969).

Hartford, however, argues that there is an insufficiency of legal evidence to support the finding of the trial Court that

there existed a binding contract between Hartford and Oglesby to insure the Cobra under the corporate policy; but, again, we must disagree. During the course of the trial, Roney testified that he told Oglesby that the Cobra could probably be put back into the corporate policy and that it was his intention to do so. Oglesby testified unequivocally that Roney did agree to place the Cobra under the corporate policy coverage. Notice of the accident was reported under the corporate policy and no request had been made by Mann-Kline to renew the $10,000–$20,000 policy. There is no indication in the record that this policy renewal was ever issued. The renewal of the corporate policy, omitting the Cobra, was issued well over a month after Hartford received the "proof of loss."

■ We recognize the general principle, subject to certain refinements, that no unfavorable inference may be drawn from the fact that a party has failed to produce a particular piece of evidence if (1) such evidence was equally accessible to both parties, or (2) its effect would be cumulative. United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685 (1953).

■ Equally as well recognized, however, is the rule that the failure of a party to produce a particular piece of evidence, when that party clearly has the ability to produce it and to do so would greatly elucidate some crucial aspect of the controversy, allows the inference to be drawn that such production (or nonproduction) would be detrimental to his case. Cooper v. Grubbs, 262 Ala. 519, 80 So.2d 284 (1955); Christian Benevolent Burial Ass'n v. Huff, 241 Ala. 119, 1 So.2d 390 (1941); Alabama Power Co. v. Talmadge, 207 Ala. 86, 93 So. 548 (1921).

■ The failure of Hartford to prove the renewal of the $10,000–$20,000 policy was circumstantial evidence from which the trial Court could infer that Mann-Kline, as agent of Hartford, entered into an agreement with Oglesby to include the Cobra on the renewed corporate policy. This conclusion is strengthened by the further permissible inference from the evidence that there was no intent on the part of any of the parties to leave the Cobra totally uninsured following the expiration date of the $10,000–$20,000 policy. Clearly, all of the parties intended the Cobra to be insured with Hartford under either the separate $10,000–$20,000 policy or the corporate policy. The failure of Hartford to show coverage under the one tends to show an intent to cover under the other.

### III.

The final issue (overruling of demurrer) concerns the averments and the nature of relief sought in the bill of complaint. Hartford contends that the trial Court lacked jurisdiction to grant declaratory relief because the controversy was not of a "justiciable" nature; or, more specifically stated, since the corporate policy attached to the bill of complaint shows on its face the omission of the Cobra, the trial Court was limited to an interpretation of the written contract. Thus, argues Hartford, the trial Court erred when it overruled its demurrer to the complaint.

■ We note from the record that the trial of this cause was concluded prior to the effective date of the ARCP. Even under the then existing common law procedure, however, our Uniform Declaratory Judgment Act, as amended (Tit. 7, §§ 156–168), was accorded the broadest liberality with respect to pleadings. All that as required (as is now the case under Rule 57) of a bill of complaint to withstand a demurrer (now a motion to dismiss) was the averment of facts sufficient to raise a bona fide justiciable controversy between the parties which should be settled. American Automobile Insurance Company v. English, 266 Ala. 80, 94 So.2d 397 (1957).

The following averments, sufficient to meet this test, are contained in paragraphs 8 and 9 of the bill of complaint:

"8. That a justiciable controversy exists between the Complainants and Respondent, Hartford Accident and Indemnity Company as to whether or not the said corporate policy provides coverage to the Complainants with respect to the claims arising out of said automobile accident, the Complainants contending that . . . the Respondent, Mann-Kline, Inc., as agent of Respondent Hartford Accident and Indemnity Company, had authority, actual or apparent, to bind, or agree to coverage of said Cobra under said corporate policy, and did bind or agree to provide full coverage under said corporate policy as hereinabove alleged.

"9. Complainants further allege that Respondent Hartford Accident and Indemnity Company contends that Respondent Mann-Kline, Inc. had no authority, actual or apparent, to provide such coverage under said corporate policy without the express authorization of other representatives of said Hartford Accident and Indemnity Company . . . ."

 Here, the "agreement to insure" issue was fully tried by the parties, and the trial Court found that the agent, acting under requisite authority, entered into an oral contract to insure. Associates Financial Services Company, Inc. v. First National Bank of Mobile, 292 Ala. 237, 292 So.2d 112 (1974); Western Railway of Alabama v. Brown, 280 Ala. 543, 196 So.2d 392 (1967).

The final decree of the trial Court, holding the Cobra was insured under the corporate policy, was in compliance with the relief sought and within the issues tried by the parties.

Affirmed.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX and SHORES, JJ., concur.