ALMON, Justice.
This is an appeal from a summary judgment granted for a defendant insurance company in a suit against the insurance company and its agent for the agent’s negligent or wanton failure to procure insurance and for his misrepresentation that he had secured insurance coverage for the plaintiffs. After granting summary judgment, the trial court entered a Rule 54(b), A.R.Civ.P., order of finality.
On October 26, 1983, Mickey and Diane Morris went to the Larry Hulsey Insurance Agency, operated by Larry W. Hulsey. Hulsey was a licensed agent for the Cotton States Insurance Companies, including the appellee, Cotton States Life and Health Insurance Company. Mr. Morris owned and operated a small business which applied seal coatings and striping to asphalt. His liability and vehicle insurance coverages were about to expire when he and his wife met with Hulsey, and he discussed obtaining these coverages from Cotton States.
The Morrises had cancelled their medical and hospitalization insurance some months previously, so they also talked to Hulsey about obtaining this coverage from Cotton States. Mrs. Morris, in her answers to interrogatories, asserted that they told Hulsey they needed “business liability, personal vehicles and medical insurance,” and that “Mr. Hulsey said Cotton States could definitely save the plaintiffs money on all their coverage.” Hulsey stated in his deposition that the Morrises merely mentioned that they would like to discuss medical and hospitalization coverage at a later date, but *1193 both Mr. and Mrs. Morris stated that they spent 20 or 30 minutes of the hour or so they were with Hulsey answering medical questions about themselves and their children as Hulsey read from and wrote on a form. Mr. Morris testified in his deposition that he had signed this form and that, although he did not actually know that it was an application for medical and hospitalization insurance because he did not have a copy, that was what he understood it to be.
Mrs. Morris stated in her deposition that she asked Hulsey at that first meeting if they were covered immediately under the health insurance and that he answered that they were. Mr. Morris stated that he did not remember asking about health insurance specifically, but that he asked more generally if they were covered under the policies they had discussed and that Mr. Hulsey had answered that they were. Mr. Morris said that he expressed concern because he had not paid anything, whereupon Hulsey said not to worry, he would bill them. Mr. Morris also testified, however, that he did not expect that he would be covered under the health insurance immediately, because he expected that it would take 30 days for processing the health insurance.
The next day, Mrs. Morris went to Hul-sey’s office with a list of the serial numbers of the vehicles and equipment to be covered. She asked him if he had calculated the rates, but he said he had not. Mrs. Morris stated that Hulsey telephoned during the first week in November to ask for one other serial number, and that she asked him again about the rates, but he told her he was still working it up. Finally, Mrs. Morris testified that on November 18, Hulsey came to the Morrises’ house to get the serial number and that when she asked again about the rates, he responded, “[W]oman, you worry more about money than anybody I have ever seen.”
The next occasion on which the Morrises talked to Hulsey was December 27, when they came to his office to discuss a claim for damages to their car. He told them to get two estimates of the repair cost. They did so, and returned to his office, at which time they decided not to file a claim because the cost was very little more than the deductible amount under their coverage. Mrs. Morris testified further:
“[Ajfter we had generally taken care of the car, I asked specifically about the health insurance. I said, I have not received a card. And, I asked him did his company issue a card. And, he said, yes. He said, how did we leave that? And, I told him that we had filled out all of that information. And, he said, well, let me take that information down again. He said, I am sure I have it somewhere in your file, but let me get it again. So, we gave him all of the information again, just the general health questions, and the information on the children.
“Q. Did you fill out a form yourself?
“A. No, he sat there with a form checking it off.
“Q. Did you sign anything, or just give him information?
“A. I don’t recall.”
Mr. Morris’s deposition was substantially in accord with the facts recited by Mrs. Morris.
On January 9,1984, Mrs. Morris took her son Matthew to the hospital. She telephoned Hulsey to ask for her policy number. According to her deposition, he told her he did not have her policy number but she could either refer the hospital to him or pay the bill and “we’ll reimburse you.” Hulsey denied that he told her she was insured. Matthew’s condition was diagnosed as diabetes, a permanent condition with which he could not thereafter obtain medical and hospitalization insurance.
The parties primarily argue the issue of whether Hulsey acted within the line and scope of his authority as an agent of Cotton States in making the alleged misrepresentations that the Morrises were covered under health insurance with Cotton States. The Morrises argue that Hulsey was a general agent for Cotton States and, as such, had authority to bind Cotton States on insurance contracts and that Cotton States may therefore be held liable for *1194 misrepresentations made by Hulsey relating to matters within the scope of his agency.
Cotton States responds that Hulsey did not have authority to issue health insurance coverage and that, therefore, any misrepresentations he may have made regarding such coverage could not impose liability upon Cotton States. Cotton States points out that the application for health insurance Hulsey filled out for the Morrises was on a form provided by Plan Services, Inc., a company for which Hulsey allegedly was licensed to broker insurance.
The Morrises append to their reply brief copies of licenses issued by, and applications for licenses submitted to, the Department of Insurance of the State of Alabama, showing Hulsey to be an agent of Cotton States for the purpose of writing health insurance. They state that these documents were included as exhibits to their trial briefs, but the licenses and applications do not appear in the record before us. Hulsey did testify in his deposition, however, that he was a general agent of Cotton States. “A general agent has full power to bind the insurer to the agent’s contract of insurance or to issue policies or to accept risks.” Washington Nat. Ins. Co. v. Strickland, 491 So.2d 872, 874 (Ala.1985), citing McGhee v. Paramount Life Ins. Co., 385 So.2d 969 (Ala.1980). Hulsey’s statement that he was a general agent is supported by the evidence that the Cotton States tradename was displayed prominently around his office.
The only items in the record tending to show any limitations on the authority of Hulsey to bind Cotton States on health insurance are its contract with Hulsey and a letter sent to him stating that major medical and disability income applications were to be on a cash on delivery basis only. Limitations on the scope of an agency agreed to between an insurance company and its agent cannot serve to limit the agency as to third persons dealing with the agent without notice. Protective Life Ins. Co. v. Atkins, 389 So.2d 117 (Ala.1980); Hartford Accident & Indemnity Co. v. Oglesby, 293 Ala. 620, 308 So.2d 695 (1975); Sun Ins. Office of London v. Mitchell, 186 Ala. 420, 65 So. 143 (1914).
The reasons for this principle were stated by the late Justice Bloodworth, writing for the Court in Cincinnati Ins. Co. v. City of Talladega, 342 So.2d 331, 337 (Ala.1977):
“In enacting this and similar legislation (providing for the licensing of insurance agents), the legislature has recognized that the responsibility for an insurance agent’s transgression of those limitations placed upon him by his principal (but not known to others) should be borne by the principal, which, after all, has certified to the Superintendent of Insurance that the agent has been investigated and found to be of good moral character and business standing and is thus responsible for the agent’s appointment to a position of trust. Clearly, the legislature did not intend that the burden fall upon members of the public who have no effective means of ascertaining the existence of unknown limitations on the authority of dishonest agents.”
Cotton States’ argument based on Hulsey’s use of a Plan Services form does not dispel all questions of material fact so as to make summary judgment appropriate. The applications included as exhibits in the record were new applications Mr. Morris signed after Matthew was diagnosed as having diabetes. The original application which the Morrises testified Hul-sey filled out on October 26 is not in the record. The Morrises were not given a copy of that application, and there is no indication that either the name “Plan Services” or the name “Sentry Insurance” appeared on this form, as they do on the ones in the record.
Even if these names were on the original application, there would exist questions of fact as to whether Hulsey pointed this out to the Morrises or explained that it meant that he was not writing this insurance with Cotton States. They were dealing with him as a Cotton States agent and he was writing other insurance for them with Cotton *1195 States. In short, there are factual questions as to just what representations Hul-sey made to the Morrises and what liability Cotton States would have for those representations. Therefore, the trial court erred in granting summary judgment for Cotton States. The judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.